SCHOOL DISTRICT No. 2, APPELLANT, *v.* RICHARDS ET AL., RESPONDENTS.

(No. 4,610.)

(Submitted January 9, 1922. Decided January 23, 1922.)

[205 Pac. 206.]

*Schools and School Districts—Board of Trustees—Fraudulent Contracts—Rescission—Taxpayer's Suit—Personal Liability of Trustees—Equity—Nonsuit.*

Schools and School Districts—Cancellation of Fraudulent Contract—Taxpayer may Sue.
   1. A taxpayer may maintain an action in behalf of a school district against its board of trustees to procure the cancellation of a contract for supplies alleged to have been fraudulently let by it.

---

1. Taxpayer's actions, see note in **Ann. Cas.** 1913C, 884.
   Right of taxpayer to maintain injunction against illegal act of public official, see notes in 3 **Ann. Cas.** 1013; 15 **Ann. Cas.** 1173; 36 **L. R. A. (n. s.)** 1; **L. R. A.** 1915D, 179.

Same—When Demand on Board of Trustees for Relief Unnecessary Before Action.

2. The rule that before relief can be asked at the hands of a court against corporate authorities, the complainant must first apply to such authorities, does not obtain in a suit by one member of a school board, as a taxpayer, against the other two to procure the cancellation of a contract fraudulently let by them, since demand of them to commence action against themselves for their own delinquency would have been useless.

Same—Trustees—Fraud—Personal Liability not Evaded by Resignation.

3. Personal liability of an officer for a fraudulent disposition of public funds cannot be evaded by his subsequent resignation.

Same—Fraudulent Supply Contract—Rescission—Restoration not Necessary, When.

4. The requirement of section 5065, Revised Codes, 1907, that before a party can rescind a contract he must restore, or offer to restore, to the other party everything of value received under it, *held* to have been sufficiently met by an allegation in a taxpayer's complaint that articles purchased under a fraudulent contract by defendant school trustees were in the school building and could be restored to the seller by the court's decree, the rule being that where restoration has been rendered impossible through no fault of plaintiff he may have relief, particularly if the court by its decree is able to bring about restoration.

Same—Contract Without Bids Void.

5. Under section 509, Chapter 76, Laws of 1913, a contract made by a school board without first calling for bids, is void.

Same—Contract Let by Individual Members Without Meeting of Board Void.

6. A contract let by a majority of the members of a school board acting as individuals and not as a board in a meeting duly called for that purpose is void.

Same—Letting of Contract for Supplies Without Considering Competing Bids *Prima Facie* Fraudulent.

7. Plaintiff's evidence showing that two of the three members of a school board had first let a contract for supplies without calling a meeting of the board or asking for bids, the contractor making delivery at once, but subsequently, upon protest by plaintiff, asked for bids, none of which, however, received attention by them except the one submitted by the party to whom the contract had been originally awarded, and that the goods delivered were of inferior quality and bought at unreasonable prices, was sufficient *prima facie* to stamp the transaction as fraudulent, and therefore the court's action in granting the motion of defendants for nonsuit, made at conclusion of plaintiff's case, was error.

Same—Board of Trustees—Fraudulent Contracts—Discretion—Definition.

8. The rule that a public board is vested with a wide discretion in awarding contracts excludes the perpetration of a fraud, "discretion" meaning power to act officially according to what appears just and proper and upon deliberate judgment.

Equity—Trial—Motion for Nonsuit Improper.

9. In an equity case, a motion by defendants at the conclusion of plaintiff's case for judgment in their favor is not one of "nonsuit," but has the effect of submitting the controversy for final judgment and presupposes that defendants have no evidence to offer or elect to stand upon the case as presented by plaintiff.

*Appeals from District Court, Silver Bow County; Edwin M. Lamb, Judge.*

Action by School District No. 2 of Silver Bow County, on relation of John Hawkins, against Frank L. Richards and others. From a judgment for defendants and an order denying a motion for new trial, plaintiff appeals. Reversed and remanded.

*Mr. Miles J. Cavanaugh,* for Appellant, submitted a brief and argued the cause orally.

Hawkins had the right and capacity to sue in the name of the school district. The school district is but a subdivision of the state. It is a municipal corporation, and the rule applying to all corporations that, when the corporation is wronged and will not or cannot sue in its own name, a stockholder may sue for it, and the relief will be for the benefit of the corporation, when recovered, applies here. (*Independent School Dist.* v. *Collins,* 15 Idaho, 535, 128 Am. St. Rep. 76, 98 Pac. 857; *Miller* v. *City of Des Moines,* 143 Iowa, 409, 21 Ann. Cas. 207, 23 L. R. A. (n. s.) 815, 122 N. W. 231; *Northern Trust Co.* v. *Snyder,* 113 Wis. 516, 90 Am. St. Rep. 867, 89 N. W. 460.) Where a majority of the city council order money paid out either without authority or through fraud, a taxpayer has a right of action and may recover money so paid. (*Stone* v. *Bevans,* 88 Minn. 127, 97 Am. St. Rep. 506, 92 N. W. 520; 5 McQuillin on Municipal Corporations, p. 915; *Orr* v. *State Board,* 3 Idaho, 190, 28 Pac. 416.)

Awarding a contract for second-hand material when new material was called for in the call for bids, where no notice was given to the other bidders and the board gave them no opportunity to bid on that basis, is void. (McQuillin, Mun. Corp., sec. 1207, p. 2660; *Lake Shore Foundry* v. *Cleveland,* 8 Ohio C. C. 671; *Ampt* v. *City of Cincinnati,* 60 Ohio St. 621, 54 N. E. 1097.) All bids must be considered. (*Mayor etc. of Baltimore* v. *Keyser,* 72 Md. 106, 19 Atl. 706.) The primary

144    School Dist. No. 2 *v.* Richards et al.    [Dec. T. '21

[62 Mont. 141.]

object of the law is the consideration and conservation of the public welfare and funds, and the officers are to act only for the public good. (McQuillin, sec. 1227, p. 2686; *McGovern* v. *Trenton,* 57 N. J. L. 580, 31 Atl. 613; *Schelbauer* v. *Kearney Twp.,* 57 N. J. L. 588, 31 Atl. 454; *Fourmy* v. *Franklin,* 126 La. 151, 52 South. 249.) There were no terms of equality in the bidding, for the reason that Connell company had already in effect sold to the district, through the unauthorized acts of the two defendant trustees, and they were in honor bound to protect it, which they proceeded and insisted on doing, to the loss of the school district. (*Ely* v. *Grand Rapids,* 84 Mich. 336, 47 N. W. 447; *Barber Asphalt Co.* v. *Wilcox,* 90 App. Div. 245, 86 N. Y. Supp. 69; *Fairbanks-Morse & Co.* v. *City of North Bend,* 68 Neb. 560, 94 N. W. 537.)

Where one has a right to rescind if in the pleadings he states he holds goods subject to order, this is sufficient restitution. (Black on Rescission of Contracts, sec. 628; *Lindow* v. *Cohn,* 5 Cal. App. 388, 90 Pac. 485; *Cox* v. *Cline,* 139 Iowa, 128, 117 N. W. 48; *Swift & Co.* v. *Redhead,* 147 Iowa, 94, 122 N. W. 140; *Loveland* v. *Jenkins-Boys Co.,* 49 Wash. 369, 95 Pac. 490; *Price* v. *Stanbra,* 45 Wash. 143, 88 Pac. 115.) Where the majority of city council orders money paid out either without authority or through fraud, a taxpayer may enjoin payment or recover part paid. (*Stone* v. *Bevans,* 88 Minn. 127, 97 Am. St. Rep. 506, 92 N. W. 520; 5 McQuillin on Municipal Corporations, 915; *Orr* v. *State Board,* 3 Idaho, 190, 28 Pac. 416.)

*Mr. N. A. Rotering* and *Mr. A. C. McDaniel,* for Respondents, submitted a brief; *Mr. Rotering* argued the cause orally.

There is in this state no action by one person to the use of another. The school district should have been made a party defendant and not a party plaintiff. When such an action as this is maintained by a stockholder or a taxpayer for the benefit of a corporation or body corporate, the corporation or body corporate is a necessary party defendant. This rule is established in Montana in the cases of *McConnell* v. *Combina-*

*tion M. & M. Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; *McConnell* v. *Combination M. & M. Co.,* 31 Mont. 563, 79 Pac. 248; *Kleinschmidt* v. *American Min. Co.,* 49 Mont. 7, 139 Pac. 785. If John Hawkins has a grievance against the other trustees or against the school district, his action is one in his own name against the proper persons defendant, and he cannot assume and take unto himself the right or authority of acting for a majority of the board of trustees. (See *Independent School Dist. No. 6* v. *Wirtner,* 85 Iowa, 387, 52 N. W. 243.)

In purchasing supplies, accepting bids and awarding contracts the board of trustees is vested with a discretion to be exercised for the advantage of the school district. (Sec. 509, Chap. 76, Laws 1913; 35 Cyc. 956.) No evidence having been introduced by the defendant because of the granting of a nonsuit, their evidence in this particular, of course, does not appear. But, taking the evidence as it is, it cannot be said that the board abused its discretion in purchasing the Connell Company piano. (See 38 L. R. A. (n. s.) 654, 655, 657, 663, notes; *Lauchheim* v. *Philadelphia,* 15 Pa. Dist. Ct. 311.) But the members of the board could see and hear the piano, and having seen and heard it, had the right, which they undoubtedly exercised, to disagree with other persons as to its worth. The judgment was theirs to form whether the Connell piano was more suitable for the school than some other piano and was worth the price paid. (*State ex rel. Eaves* v. *Richards,* 16 Mont. 145, 50 Am. St. Rep. 476, 28 L. R. A. 298, 40 Pac. 210; *Cleveland Fire Alarm Tel. Co.* v. *Metropolitan Fire Commrs.,* 55 Barb. 288, 7 Abb. Pr. (n. s.) 49; *People ex rel. Assyrian Asphalt Co.* v. *Kent,* 160 Ill. 655, 43 N. E. 760; *Stern* v. *Spokane,* 60 Wash. 325, 111 Pac. 231.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The complaint in this action, omitting the formal parts, sets forth that plaintiff and defendants Richards and Chinn con-

stituted the board of trustees of school district No. 2, Silver Bow county; that on November 14, 1918, Richards and Chinn, assuming to act for the school district, wrongfully and corruptly entered into a contract with defendant Connell Company for the purchase by the district of a piano and victrola at the agreed price of $663.45; that the contract was made without a meeting of the board being held or the contract authorized and without any bids having been called for, as required by law; that the instruments were delivered to the district on November 17; that, upon protest being made by plaintiff, the board ordered that bids be received and a notice calling for bids to be opened on February 15, 1919, was published in one of the Butte papers; that the defendants Richards and Chinn, in agreeing to call for bids, acted in bad faith without any intention of considering any bids which might be submitted, and only for the purpose of giving color of legality to their proceedings, and with the intention of ratifying and confirming the illegal contract previously made with the defendant Connell Company; that at the meeting held on February 15 two other bids were received, each lower than the bid of the Connell Company, but that defendants Richards and Chinn, intending to defraud the district, ignored and refused to consider the other bids and arbitrarily awarded the contract to the defendant Connell Company for the sum of $663.45, and immediately ordered a warrant for that amount to be drawn and delivered; that the warrant was drawn, delivered and cashed; that the instruments purchased did not meet the requirements contained in the published notice, but were greatly inferior in quality, and the price paid therefor grossly excessive. The prayer is for the cancellation of the contract, for the return of the goods to the seller, and for the recovery of the purchase price, with interest, for the use of the district. Issues were joined and the cause brought on for trial. At the conclusion of plaintiff's testimony, the court, upon motion of defendants, rendered and had entered a

judgment dismissing the complaint. From that judgment and from an order denying a new trial, plaintiff appealed.

The right of the plaintiff to maintain the action cannot be [1] questioned. This is a taxpayer's suit, but the judgment recovered inures to the benefit of the school district. Plaintiff could gain nothing from a successful termination of the action except the benefit common to all taxpayers which would accrue from preserving the public funds from unlawful dissipation. (*Independent School Dist.* v. *Collins,* 15 Idaho, 535, 128 Am. St. Rep. 76, 98 Pac. 857; 14 C. J. 938.) It is immaterial whether a school district of. this, state is, strictly speaking, a municipal corporation. It is a public corporation, and as such may sue and be sued. (Sec. 402, Chap. 76, Laws 1913.) It [2] is the general rule that in a controversy of this character relief must be sought first from the corporate authorities (*Brandt* v. *McIntosh,* 47 Mont. 70, 130 Pac. 413), but, where it is made to appear that the majority of the governing board acted fraudulently in bringing about the condition of which complaint is made, it would be idle to demand of the members constituting the majority that they institute suit against themselves and charge their own delinquency as the ground for recovery (*Gerry* v. *Bismarck Bank,* 19 Mont. 191, 47 Pac. 810; *McConnell* v. *Combination M. & M. Co.,* 30 Mont. 239, 104 Am. St. Rep. 703, 76 Pac. 194; *Kleinschmidt* v. *American* [3] *Min. Co.,* 49 Mont. 7, 139 Pac. 785). Neither does it alter the situation that after the transaction in question and before the trial defendant Richards resigned as trustee. His personal liability is predicated upon his fraudulent disposition of the public funds, and that liability cannot be evaded by his subsequent resignation.

Section 5065, Revised Codes of 1907, provides that, as a [4] condition precedent to the right to rescind a contract, the party seeking rescission must restore to the other party everything of value received under the contract or offer restoration. This statute is but declaratory of a rule in effect long prior to the enactment of our Codes, and it has been held quite

uniformly that, where restoration has been rendered impossible or impracticable through no fault of the rescinding party, he may have his relief, particularly if the court is able to accomplish the result by its decree. (2 Black on Rescission, secs. 616 and 618.) Plaintiff constituted a minority of the board, and, as such, had no more authority than a stranger to redeliver, or offer to redeliver, the property to the seller. He does allege in his complaint that the instruments are in the school building where they were wrongfully placed by the seller and may be restored by the court's decree. Under the circumstances, we think this is a sufficient compliance with the rule, particularly in view of the fact that the property was purchased without plaintiff's consent and over his protest.

[5, 6] The contract of November 14, 1918, was void because bids were not called for as required by law (sec. 509, Chap. 76, Laws of 1913), and because the members, Richards and Chinn, acted as individuals and not as a board in a meeting duly called for that purpose. (35 Cyc. 902, 903.)

The evidence discloses the following facts: On November [7] 14, 1918, Richards and Chinn met with an agent of the Connell Company and assumed to enter into a contract and bind the district to purchase from the Connell Company a piano and victrola, some needles and records, for $663.45. The instruments were delivered to the school district on November 17 and a bill for the purchase price presented three or four days later. There had not been any meeting of the board and no bids had been called for. Later plaintiff protested to the other board members and it was then ordered by the board that bids he called for, and notice was published in a Butte paper. The notice called for bids upon "one high-grade piano, not to exceed $400, and one large victrola, not to exceed $225, in value." On February 15, 1919, the date mentioned in the notice, four bids were submitted. The Connell Company offered a Harrington piano for $385 and a No. 16 victrola for $225. J. B. Barrie submitted a bid for a Wick piano at $325 and a Pathé phonograph for $90. M. H. Hall offered a

victrola for $185, and Orton Bros. offered five pianos at prices ranging from $450 to $475, each, and one piano for $290, and a victrola for $225, with the statement that a discount of $100 would be allowed if both instruments were purchased from them. The evidence further discloses that, upon these bids being read by the clerk all of them except the Connell Company's bid were laid to one side; that defendant Richards immediately moved that the contract be awarded to the Connell Company, but before the motion was acted upon there was some discussion by a representative of the Connell Company and a representative of Orton Bros. At the conclusion of the discussion the roll was called, and defendants Richards and Chinn voted in favor of the motion and plaintiff against it. A warrant was thereupon drawn for the purchase price and delivered to the representative of the Connell Company, and it is admitted that it was received and cashed by that company.

There is evidence that neither Richards nor Chinn gave any consideration to the bids other than the bid of the Connell Company. Touching the character of the property purchased, the evidence discloses that the piano was about a third-grade instrument when new, and, when new, was of the reasonable value of $275 or thereabouts; that in fact it was a second-hand piano which had been subjected to hard usage for anywhere from two to five years; that several of the hammers had been broken off and repaired in an unworkmanlike manner; that the keys were yellow with age; that the strings were badly rusted and had been covered with japalac or some similar substance to hide the rust; that some of the strings had been broken and repaired; that under the keys there had accumulated large quantities of dust, pins, burnt matches, buttons, carpet sweepings, lint, *etc.;* that at one end a large piece had been broken out of the case and replaced with putty or some other substance, and that in its then condition the instrument was worth not to exceed $200; that the victrola was an old style instrument, a style not then manufactured;

and that its selling price, $200, was marked plainly on the case.

To say the least of it, this evidence established a *prima facie* case of fraud. The fact that the transaction had its inception in an illegal contract, that the instruments purchased did not measure up to the requirements of the published notice, that the piano was a cheap, inferior, second-hand instrument which had been subjected to long, hard usage, that the price paid for it was nearly double its fair, reasonable value, and that the price paid for the victrola was $25 more than the retail price, and the fact that no consideration was given to the bids other than the bid of the Connell Company, cannot be reconciled with the theory that the majority of the board acted in good faith and solely for the best interests of the district.

It is urged by respondents that the board was vested with [8] a wide discretion in awarding the contract, and this may be conceded to be the general rule. (35 Cyc. 956.) Discretion, as applied to public functionaries, however, means the power or right to act officially according to what appears just and proper. (3 Words and Phrases, First Series, 2096.) It means "deliberate judgment" (2 Words and Phrases, First and Second Series, 64), and it is a contradiction of terms to say in this instance that the majority, acting as the board, exercised discretion, but were prompted by a fraudulent purpose. Fraud and discretion do not exist in the same place at the same time.

The motion made by the defendants at the conclusion of [9] plaintiff's case is designated a motion for nonsuit. Such a proceeding is unknown to the equity practice. It had the effect, however, of a submission of the entire controversy for final judgment (*Streicher* v. *Murray,* 36 Mont. 45, 92 Pac. 36) and presupposed that the defendants had no evidence to offer or that they elected to stand upon the case presented by the plaintiff (*Stevens* v. *Trafton,* 36 Mont. 520, 93 Pac. 810).

No good cause appearing for ordering a new trial, the judgment and order are reversed and the cause is remanded to the district court, with directions to enter the proper judgment in favor of the plaintiff.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES REYNOLDS, COOPER and GALEN concur.

Rehearing denied March 6, 1922.