GUY D. GEORGE and GUY GEORGE, JR., Plaintiffs and
Appellants, *v.* FISH CREEK IRRIGATION COMPANY,
and JEFFERSON CANAL COMPANY, Montana Corpora-
tions, Defendants and Respondents.

No. 9791.
Submitted April 9, 1959. Decided July 22, 1959.
342 Pac. (2d) 738.

Frank E. Blair, Virginia City, Ralph J. Anderson, Stanley P. Sorenson, Helena, for appellants. Frank E. Blair and Ralph J. Anderson argued orally for appellants.

Lyman H. Bennett, Jr., Bozeman, John H. Jardine, Whitehall, argued orally for respondents.

MR. CHIEF JUSTICE HARRISON:

This is an action to abate as a nuisance a dam owned by the defendants and to enjoin defendants from restoring the dam to its present condition without affording an outlet for silt, debris, ice and other accumulations.

By their complaint the plaintiffs charged negligence in the construction of the dam in that defendants failed to provide any opening through which silt or refuse could be released, or to install a dam of a type which might be dropped or folded at times of flood or when not required to divert water; that by reason of such facts the river channel was filling and would continue to fill with silt and refuse, and its carrying capacity diminish, the current become retarded and quantities of ice caused to accumulate against the upper side of the dam which would tend to further reduce the capacity of the channel and increase the hazard of flooding plaintiffs' land.

Defendants denied each and every allegation of negligence.

The cause was tried to the court, sitting without a jury, and the court made findings of fact and conclusions of law in favor of the defendants and judgment was entered.

Plaintiffs thereupon appealed and contend the district court erred in finding that the defendants, many years prior to the occupancy by the plaintiffs of any of the lands, constructed a permanent dam pursuant to the terms of the easement and thereafter maintained it across the Jefferson river and used it to divert water into their canal for irrigation; that the dam was permanent in nature when it was first constructed and has been repaired and revised; and in concluding as a matter of law that under the grant the defendants have a perpetual easement to maintain the dam in its present condition or in

any other condition conforming to the grant and may flood the land described, free of any claim for damages or other relief.

It is the contentions of the plaintiffs in this regard that the evidence is insufficient to support these findings and conclusions by the district court. In this respect it appears from the record that plaintiffs are the owners of the Southwest Quarter of Section 14, Township 1 South, Range 5 West, in Madison County, Montana, lying south of the Jefferson River. At some time in the year 1884 or 1885 defendants, or their predecessors in interest, constructed a dam across the Jefferson River for purposes of securing water for irrigation. On March 29, 1909, Theresa Held, predecessor in interest of the plaintiffs, executed an easement to the defendants which grants:

"The right to construct, repair, operate and maintain a dam across the Jefferson River, where the said dam is now located in said River in Section 14, T. 1 S, R 5 W, M. M., with full and complete right for all time to come to maintain said dam to a height of not exceeding eight (8) inches above the top of the piling now driven in the said dam at the highest point thereof; with full and complete and perpetual right to flood the Southwest Quarter of said Section 14, T. 1 S, R 5 W, by reason of the operation and maintenance of said dam as above provided, and no damage shall be claimed by reason of the operation or maintenance of the said dam from any cause."

The above instrument was recorded in Book 79 of deeds, at page 501, of the records of Madison County, Montana, on May 14, 1909.

The senior George had resided in the area since 1919. He testified that from 1919 to 1936 the defendants had put a dam in during low water and taken the same out in the fall; that in 1936 the defendants constructed a more permanent structure from the north bank about half way across the river.

The junior George testified that in 1949 defendants constructed the dam from the middle of the river to the south bank so that the dam then extended from bank to bank, which

construction conformed to the work done in 1936, so that the dam was of the same size throughout.

Plaintiffs offered the deposition of Gertrude Kirby Harbison, who moved on the property in question in 1910 and lived there until 1919. She testified:

"From the time we went there there was a permanent dam in the bed of the river, composed of large boulders. That was allowed to remain there at all times. Once in a while an ice gorge would wash some of the boulders down, but they would bring them back and replace them. After the waters lowered after the spring runoff they cut down trees on the Welcome Ranch across the river and made large horses. They cut down big trees and put the butts upstream and they set these above the comb of the boulders and then they filled in with brush and sand. I have seen them bring in loads of straw and put in there, to raise the water level to get into the ditch. In the fall they had to take all that superstructure away. That was the way it was operated all the years we lived there."

Plaintiffs offered the deposition of James A. Jergensen, who was acquainted with the irrigation project from 1906 to 1923, and who had charge of the care of the project for three or four years, and during the time he was in charge he did construct a temporary dam, sometimes removing the structure in the fall, other times it was carried out by high water; it covered the entire channel of the river and there were some boulders or rocks in the river which formed an obstruction which would back up the stream and form a riffle.

On cross-examination he stated he was inclined to think there was some sort of pilings there when he first saw it, and when he left they were still in the river, and if they were there they would be just about level with the boulders, so he could not say for sure.

O. W. Monson, an engineer, testified by deposition as to observations and measurements he had taken at the dam and vicinity, disclosing in his opinion a silting condition and retardment of flow which could result in times of ice jams or

high water in overflow upon the George property. He described a type of removable dam which he believed would eliminate any danger of damage to the George property. He took soundings, measured the velocity of the river, and examined the flow records for many years. In his opinion the slowing of the flow had reduced the river's carrying capacity for silt and debris and caused it to deposit it along the banks, thus narrowing the channel to the extent of the accumulations.

On cross-examination he admitted that any dam, other than a collapsible or removable one, would accomplish the same results as he had found present in the Jefferson river.

In defendants' case, Charles Elmer testified that he was familiar with the irrigation ditch for seventy years; that he worked on the dam in 1901, at which time they drove three rows of piling across the river and filled them with rock and capped them with four-inch square timbers; that it was a permanent structure and it is still there; that he worked on it almost every year from 1901 repairing it, keeping it up; that in 1936 the river commenced cutting the piling off and they laid planks on it to stop it from cutting the pilings; that it was not constructed completely across the river because part of it was good; that later in 1947 or 1949, he was not sure of the year, the river washed a hole in the dam and the balance was planked; that the dam as now existing is fourteen inches lower than the original dam was and it is in the same identical place, tied to the same pilings; and that the work in 1936 and in 1947 or 1949 was repair work.

Defendants offered the deposition of Arthur Tuttle, who testified that he had known of the dam for about fifty or fifty-one years; that in the winter of 1900-1901 he worked on the dam, drove a pile driver team most of the time and hauled rock which was dumped in the river between the pilings; that three rows of pilings were driven and they were driven to a point about three-fourths of the way across the river while he was working; that he stopped working and left the vicinity, but

a year or two later he went across the dam and the pilings were then bank to bank.

On cross-examination on rebuttal the senior George admitted there were pilings in the river, placed before his time, and that there was quite a bit of rock but they had washed down stream.

This evidence in our opinion would support the findings and ██ conclusions of the district court. As we said in Cook v. Hudson, 110 Mont. 263, 103 Pac. .(2d) 137, 143:

"In the consideration of cases such as that at bar, we are governed by the rule that the supreme court may examine the evidence and determine a question of fact for itself, but it cannot overturn findings of the trial court unless there is a decided preponderance of the evidence against them [Citing cases.], and in such cases when all the evidence is before this court we may, under section 8805 [Revised Codes of 1907, now section 93-216, R.C.M. 1947], determine a fact upon which the trial court failed to make a finding (Walsh v. Hoskins, 53 Mont. 198, 162 Pac. 960), and where the contention is made that the evidence is insufficient to support the findings of the trial court we will go no further than to determine whether there is a decided preponderance against the findings and if there be reasonable grounds for differing opinions the decisions will not be disturbed. Nolan v. Benninghoff, 64 Mont. 68, 208 Pac. 905.''

Plaintiffs contend error by reason of the failure of the district court to rule on the admission of certain depositions, citing Gilcrest v. Bowen, 95 Mont. 44, 24 Pac. (2d) 141, and Langston v. Currie, 95 Mont. 57, 26 Pac. (2d) 160, in support thereof. We are not unmindful of the comments made in those cases, but we fail to find any prejudice resulting in this cause by reason of the failure of the court to rule and in this respect both sides were treated alike.

The final specification of error contends that the district court erred in failing to rule upon defendants' motion for nonsuit and thereafter receiving evidence on behalf of defendants. In support, counsel cites School District No. 2,

of Silver Bow County v. Richards, 62 Mont. 141, 205 Pac. 206, and Stephenson v. Rainbow Flying Service, Inc., 99 Mont. 241, 42 Pac. (2d) 735. This contention was also before this court in Feeley v. Feeley, 72 Mont. 84, 231 Pac. 908. We fail to see wherein plaintiffs were prejudiced by this practice of the district court.

Respondents have specified a number of cross-specifications of error, but in view of what we have heretofore said no purpose would be served by a consideration thereof, since the judgment in favor of respondents must be affirmed.

It is so ordered.

MR. JUSTICES BOTTOMLY, ANGSTMAN, ADAIR and CASTLES, concur.