No. 93-464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

LINDA WALLER,

     Plaintiff and Appellant,

   v.

VIRGIL L. HAYDEN, M.D.,

     Defendant and Respondent.

**FILED**

DEC 13 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Seventh Judicial District,
In and for the County of Richland,
The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Charles L. Neff, Bhella, Neff, Rathert,
Wahl & Eiken, Williston, North Dakota

     For Respondent:

          John H. Maynard and Ken C. Crippen,
Browning, Kaleczyc, Berry & Hoven,
Helena, Montana

Submitted on Briefs:  July 6, 1994

Decided:  December 13, 1994

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiff Linda Waller filed a complaint in the District Court for the Seventh Judicial District in Richland County to recover damages from defendant Virgil L. Hayden, M.D., for what she alleged was negligent surgical treatment, battery, and reckless disregard for her well-being. Waller's claims were presented to a jury during an eight-day trial. Afterward, a verdict was returned in favor of Hayden on all claims. Waller appeals from the judgment entered pursuant to that verdict, and the District Court's denial of her motion for a new trial. We affirm the judgment of the District Court.

The only issue on appeal is whether the District Court abused its discretion when it excluded evidence of Hayden's involvement in disciplinary proceedings which were commenced in another state based on conduct that occurred ten years prior to the conduct which was the subject of Waller's claim.

FACTUAL BACKGROUND

Since Waller's appeal is limited to the issue set forth above, a complete record of the trial court proceedings has not been provided, and our summary of the facts is necessarily based on the written pleadings and arguments of the parties and the testimony of defendant Virgil L. Hayden, M.D. However, that record is sufficient for purposes of resolving the issue presented.

On November 18, 1991, Waller filed a complaint in Richland County District Court in which she named Hayden as the defendant. She alleged that Hayden was a physician licensed to practice in

2

Montana, and that he specialized in obstetric and gynecological care. She stated that she first saw Hayden on June 20, 1989, for vaginal discomfort and other complaints; that he performed a surgical procedure known as laparoscopy on July 11, 1989; and that as a result of his initial examination and his observation of Waller's ovaries during the laparoscopy, he formed the opinion that Waller was suffering from endometriosis affecting her uterus, ovaries, and fallopian tubes. On that basis, he recommended a complete hysterectomy, or removal of her uterus, and a bilateral salpingo oophorectomy, or removal of her ovaries and fallopian tubes. She accepted his advice and underwent both procedures by intra-abdominal surgery on August 11, 1989.

Endometriosis is defined as the presence of tissue similar to the lining of the uterus at other sites in the pelvis. The tissue undergoes periodic changes similar to those of the endometrium and causes pelvic pain throughout and after menstruation. Bantam Medical Dictionary 143 (Rev. ed. 1990).

Waller alleged in her complaint, and it was confirmed at trial, that pathological studies of her ovaries after they were removed did not disclose the presence of endometriosis in those parts of her body. For that reason, she alleged that Hayden negligently formed his pre-operative diagnosis, and was negligent when he removed her ovaries and fallopian tubes. She also alleged that because of the premature removal of her ovaries and fallopian tubes at the age of 38, she suffered a loss of natural estrogen, which exposes her to numerous increased health risks.

3

For a second cause of action, Waller alleged that because Hayden knew she did not want to have her ovaries removed unless it was absolutely necessary, and because he knew, or should have known, that it was unnecessary when he removed them, he committed a battery upon her person.

For a third cause of action, Waller alleged, and Hayden subsequently admitted, that during the surgical procedure that he performed on August 11, 1989, he cut, or in some other way tore, a portion of her bowel, and that although it was surgically repaired, she suffered subsequent restriction of the bowel at that location from stenosis which had to be treated surgically at a later date.

For a fourth cause of action, Waller alleged that during his conversations with her following surgery, Hayden misrepresented or concealed the full extent of damage that was caused to her bowel during surgery; that she suffered more severe health consequences as a result of his concealment, and that because of this reckless disregard for her well-being, she was entitled to actual and punitive damages.

Hayden admitted that he was a licensed physician who specialized in obstetric and gynecological care; that he was consulted by Waller for the complaints she described on June 20, 1989; that he performed a laparoscopy on her on July 11, 1989; and that he performed the surgical procedures described previously on August 11, 1989. He also admitted that plaintiff's bowel was damaged and surgically repaired during the August 11 surgery, and that that injury later caused stenosis which had to be surgically

4

treated. However, he otherwise denied her allegations and affirmatively stated that at all times his care for her complied with acceptable standards for members of his profession. He specifically denied that he concealed from her the nature of the injury to her bowel following surgery.

Prior to trial, Waller learned that from 1973 until 1982 Hayden practiced medicine in Pine Bluff, Arkansas, and that while there he was involved in a peer review process which ultimately led to recommendations for supervision of some aspects of his practice and mandatory post-graduate education. She learned that the peer review process in Arkansas began when a fellow physician at the hospital where Hayden worked wrote to the obstetrics-gynecological department and complained that Hayden had performed an unnecessary cesarean section. In response to that complaint, a committee in that department conducted an investigation which ultimately led to its conclusion that Hayden had performed two unnecessary cesarean sections. As a result of the investigation, Hayden was, for a period of time, required to obtain consultation prior to performing any further cesarean sections, and was ordered to obtain additional post-graduate education.

Hayden apparently concluded that he was unable to satisfy the additional education requirement and still maintain his practice. Therefore, he terminated his practice in Arkansas and moved to Sidney, Montana, in 1982.

On November 17, 1982, Hayden filed a complaint in the Federal District Court for the Eastern District of Arkansas in which he

5

named Jefferson Regional Medical Center, its administrator, and eight of the doctors on its medical staff, as defendants. Jefferson Regional Medical Center is the hospital at which Hayden practiced during the disciplinary process previously described. In his complaint, he alleged that the disciplinary action taken against him by the defendants (1) denied him equal protection and due process in violation of the Fourteenth Amendment and 42 U.S.C. § 1983; (2) conspired to form a group boycott against him and combine to a certain monopoly power in violation of §§ 1 and 2 of the Sherman Antitrust Act; (3) made defamatory statements about him; and (4) interfered with and conspired to interfere with his business relationship. *See Hayden v. Bracy* (8th Cir. 1984), 744 F.2d 1338.

The district court dismissed Hayden's claims based on 42 U.S.C. § 1983 and the Sherman Antitrust Act by summary judgment, and after a nonjury trial, entered judgment for the defendants on the other claims.

Prior to the trial in this case, Hayden moved in limine for an order precluding Waller from referring to the disciplinary proceedings that occurred in Arkansas, or the litigation commenced by Hayden in the Federal District Court in Arkansas. On April 2, 1993, the District Court granted that motion, except to the extent that Hayden "opened the door" to admission of the Arkansas evidence, or to the extent that it was necessary for impeachment purposes. During the pretrial conference, after Waller requested that the District Court reconsider its order, the District Court

6

clarified that unless the defendant testified and tried to embellish on his qualifications, the Arkansas information was irrelevant to the issues in this case. The District Court reasoned that Hayden's qualifications for diagnosis of endometriosis had nothing to do with his judgment related to cesarean section procedures performed ten years earlier.

This case proceeded to trial and Hayden was called by Waller as an adverse witness during the presentation of her case. He was examined at length by her attorney. Near the conclusion of that examination, Waller renewed her request that the court reconsider its order in limine, and if allowed, offered to present the following evidence:

1. Testimony from Hayden in the Arkansas trial that he moved from Arkansas to Montana because of fear that his privileges to practice at the Arkansas hospital were in jeopardy.

2. A certified copy of the complaint filed by Hayden in the Federal District Court for the Eastern District of Arkansas in which the Jefferson Regional Medical Center and its staff members were named as defendants.

3. A certified copy of the findings of fact and conclusions of law from the Federal District Court in Arkansas which resolved Hayden's complaint.

4. A certified copy of the published opinion of the United States Court of Appeals for the Eighth Circuit which affirmed the Federal District Court's disposition of Hayden's claim against the Jefferson Regional Medical Center and its staff members.

7

The District Court rejected Waller's offer of proof for the following reasons:

1. That since the federal litigation related to issues of defamation and wrongful interference with Hayden's ability to work, it was not directly related to his professional qualifications;

2. That even if his qualifications to perform cesarean sections were at issue in the evidence offered, it had little probative value to the issues in this case, and therefore, was not sufficiently relevant;

3. That the passage of eight to ten years from the events which were the subject of Waller's offer of proof until the acts complained of in this case, made the prior evidence far too remote and dissimilar to be relevant; and

4. That even if the evidence was somehow relevant, its prejudicial impact outweighed whatever probative value it might have.

Following eight days of trial, the jury returned a special verdict in which it found that (1) Hayden's diagnosis was not negligent; (2) Hayden's recommendation for removal was not negligent; (3) Hayden did not commit battery upon Waller; and (4) Hayden was not negligent in his post-operative care and treatment.

On May 27, 1993, Waller moved for a new trial pursuant to Rule 59, M.R.Civ.P., and § 25-11-102, MCA, based on the District Court's refusal to allow her to cross-examine Hayden on his reasons

8

for leaving Arkansas, and based on the District Court's rejection of her offer of proof.

In its order dated August 10, 1993, in which it denied Waller's motion for a new trial, the District Court relied primarily on Rule 403, M.R.Evid., for its conclusion that even if relevant, the probative value of the Arkansas evidence was substantially outweighed by the risk of unfair prejudice, and therefore, it was inadmissible.

Waller appeals from the District Court's April 2, 1993, order in limine; the District Court's orders during trial excluding evidence related to Hayden's Arkansas experience; and the District Court's order denying her motion for a new trial.

DISCUSSION

Did the District Court abuse its discretion when it excluded evidence of Hayden's involvement in disciplinary proceedings which were commenced in another state based on conduct that occurred ten years prior to the conduct which was the subject of Waller's claim?

"We have held that the decision to deny a motion for a new trial is within the sound discretion of the trial court and will not be overturned absent a showing of manifest abuse." *Geiger v. Sherrodd, Inc.* (1993), 262 Mont. 505, 508, 866 P.2d 1106, 1108 (citing *Tope v. Taylor* (1988), 235 Mont. 124, 131-32, 768 P.2d 845, 849-50).

On appeal, Waller argues, as she did in the District Court, that even though she called Hayden as an adverse witness in her own case, he was an expert pursuant to Rule 702, M.R.Evid., based on

9

his knowledge, experience, training, and education, and therefore, that he was subject to impeachment regarding his qualifications as an expert. Waller relies on our decision in *Hart-Anderson v. Hauck* (1988), 230 Mont. 63, 73-74, 748 P.2d 937, 943-44, for the principle that during cross-examination of an expert witness, parties are entitled to test the knowledge, competency, and qualifications of that witness.

While we have no reservation about concluding that Virgil L. Hayden, M.D., a licensed physician and board certified obstetrician and gynecologist, is an expert witness when testifying about subjects within the scope of his professional knowledge, that does not mean that traditional rules of relevance, remoteness, and fairness are inapplicable to his cross-examination. Furthermore, unless there has been a manifest abuse of discretion, we have traditionally concluded that the district court, which is intimately familiar with the facts and parties in each case, is in the best position to apply those rules.

For example, in *Britton v. Farmers Insurance Group* (1986), 221 Mont. 67, 721 P.2d 303, we held that the test of relevancy is whether proffered evidence makes a fact in issue more or less likely. We held that "[u]nless evidence naturally and logically tends to establish a fact in issue, it is not admissible." *Britton*, 721 P.2d at 315 (citations omitted). We also held that "[i]n the usual case, questions of admissibility of evidence are left largely to the sound discretion of the trial court, subject to review only in

10

case of manifest abuse." *Britton*, 721 P.2d at 315 (citing *Cech v. State* (1979), 184 Mont. 522, 604 P.2d 97.

In *Preston v. McDonnell* (1983), 203 Mont. 64, 67, 659 P.2d 276, 277, we held that in considering whether evidence was relevant, a trial court could consider the remoteness of the proffered evidence. In that case, the plaintiffs bought a Red Lodge bakery in 1979 and were subsequently unable to obtain a license from the Montana Department of Health. They sued the seller to rescind their contract for purchase, and in an effort to show that he was aware of the conditions which made licensing difficult, they offered to prove that he had received two conditional health licenses in 1968 and 1969. This evidence was excluded by the district court because the prior conditional licenses were too remote in time to have any probative value. We affirmed the district court on appeal and held that:

> In determining whether evidence is too remote to be relevant, a trial court is not guided by any fixed rules. Rather, the nature of the evidence and the circumstances of the particular case must control. 2 Wigmore, Evidence § 437 (Chadbourn rev. 1979). For this reason, the determination of remoteness is left in great part to the trial court's discretion. *Wigmore*, supra; *Courtney v. Courtney* ([Alaska] 1975), 542 P.2d 164; *Gilliland v. Rhoads* ([Wyo.] 1975), 539 P.2d 1221; *Blankenship v. Brookshier* (1966), 91 Ida[ho] 317, 420 P.2d 800; and *Morrison v. Bradley* ([Colo. Ct. App.] 1980), 622 P.2d 81, cert. granted Dec. 15, 1980. The trial court's determination of relevancy is subject to review only in the case of manifest abuse. See also *Gunderson v. Brewster* (1970), 154 Mont. 405, 466 P.2d 589; *Cech v. State* (1979) [184] Mont. [522], 604 P.2d 97, 36 St.Rep. 2185.

> Here, the District Court did not abuse its discretion. The condition of the bakery ten years prior

11

to its sale could easily be considered too remote and irrelevant. Many old deficiencies may have been corrected, while new, yet similar, deficiencies may have arisen. The District Court did not err by refusing admission of the conditional health licenses.

*Preston*, 659 P.2d at 277-78.

For a similar conclusion and a similar standard of review, based on evidence that was at least seven years old, *see In re Marriage of Starks* (1993), 259 Mont. 138, 145, 855 P.2d 527, 531-32.

We have applied a similar standard of review to evidence which is excluded because the district court concludes that its probative value is substantially outweighed by the danger of unfair prejudice. In *Zeke's Distributing Co. v. Brown-Forman Corp.* (1989), 239 Mont. 272, 277, 779 P.2d 908, 911, we held that:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Rule 403, M.R.Evid. This determination of admissibility is within the discretion of the trial judge and will not be disturbed unless there is manifest abuse of discretion. *Welnel v. Hall* (1985), 215 Mont. 78, 694 P.2d 1346, *Kimes v. Herrin* (1985), 217 Mont. 330, 705 P.2d 108, *Dahlin v. Holmquist*, (1988), [235 Mont. 17,] 766 P.2d 239.

In this case, we cannot conclude that the District Court manifestly abused its discretion when it held that the evidence of disciplinary proceedings in Arkansas, Hayden's lawsuit which resulted from those proceedings, and Hayden's reasons for leaving Arkansas, were either irrelevant because of their remoteness, or if relevant, more prejudicial than probative. The events which led to the Arkansas disciplinary proceedings occurred eight to ten years prior to the acts complained of by plaintiff; those complaints

12

related to Hayden's judgment about when to perform cesarean sections and his relationships with other staff members; and his federal lawsuit simply resolved whether his accusers had done anything wrong--not whether he was qualified professionally. It is within the range of a district court's discretion to conclude that there was nothing in the Arkansas evidence which made it more or less likely that Hayden was negligent when he treated Waller in 1989, or that he concealed the true nature of her physical condition following surgery in 1989.

If, as argued by Waller, the Arkansas evidence, and in particular, the judgment of Hayden's peers that he needed additional education, was relevant to his qualifications, and his qualifications were relevant to the issue of professional negligence, it was still within the discretion of the District Court to exclude the evidence based on its conclusion that it was more prejudicial than probative. We conclude that under the facts in this case a manifest abuse of the District Court's discretion has not been established. Therefore, we conclude that neither did the District Court abuse its discretion when it denied plaintiff's motion for a new trial.

However, since cases like this are read by attorneys and district court judges for the purpose of future guidance and the avoidance of future evidentiary errors, it is appropriate to clarify the meaning of our decision. This decision does not mean that businesses or professionals who have been discredited elsewhere can find sanctuary in Montana and that their past will

13

never follow them. Instead, it simply affirms the traditional rules of appellate review, and this Court's conviction that district courts are the best place to make evidentiary rulings.

The notion that a decision by the district court is discretionary assumes there is no absolutely correct answer for every evidentiary issue. It assumes that the decision is a judgment call best left to the person closest to the case--the district judge. By holding that the District Court did not abuse its discretion when it excluded the evidence proffered by the plaintiff in this case, we do not mean that it would have abused its discretion had it admitted the evidence. We simply conclude that the District Court's judgment was exercised within that permissible range best left to the district court.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

14

William E. Hunter

_____

_____

_____
Justices

December 13, 1994

CERTIFICATE OF SERVICE

I hereby certify that the folowing cerified order was sent by United States mail, prepaid, to the following named:


Charles L. Neff, Esq.
Bjella, Neff, Rathert, Wahl & Eiken, P.C.
111 E. Broadway, Drawer 1526
Wiliston, ND 58802-1526

John H. Maynard, Esq.
Browning, Kaleczyc, Berry & Hoven, P.C.
P.O. Box 1697
Helena, MT 59624

                                    ED SMITH
                                    CLERK OF THE SUPREME COURT
                                    STATE OF MONTANA

                                    BY: _S. Gallagher_
                                    Deputy