No. 95-133

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

WILBUR A. FADNESS, individually,
and as Successor in Trust for
Mildred H. Fadness,

      Plaintiff and Respondent,

  v.

WILLIAM KUNTZ, III and
ANNA DE LA CHAPELLE KUNTZ,

      Defendants and Appellants.

FILED

MAR 28 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fifteenth Judicial District,
                 In and for the County of Roosevelt,
                 The Honorable Leonard H. Langen, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          William Kuntz, III, Pro Se, Westport, New York

      For Respondent:

          Zane K. Sullivan and Leslae J. E. Dalpiaz;
          Sullivan & Tabaracci, Missoula, Montana

                        Submitted on Briefs:  March 7, 1996

                                Decided:  March 28, 1996

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter and West Publishing Company.

William Kuntz, pro se, appeals from the judgment of the Fifteenth Judicial District Court, Roosevelt County, awarding the plaintiff the principal and interest due on a promissory note and punitive damages arising from defendant's fraudulent conduct in a contract to purchase real property. We affirm.

We consider the following issues raised on appeal:

1. Did the District Court deny Kuntz a fair trial by ordering him detained in the presence of the jury?

2. Did the District Court err in not ruling on Kuntz's motion that his former counsel turn over his file?

3. Did the District Court err in excluding certain evidence and exhibits offered by Kuntz?

4. Did the District Court err in rejecting certain New York pattern jury instructions and interrogatories offered by Kuntz?

5. Did the District Court err in overruling Kuntz's objection to statements in the closing argument relating to the "lumberyard property?"

6. Did the District Court award excessive fees to Fadness?

7. Did the District Court err in not granting Kuntz's motion for a directed verdict?

8. Did the District Court err in not allowing Kuntz to make a motion for a new trial at the conclusion of the jury trial?

This case arises out of a dispute regarding 160 acres of land located near Wolf Point, Roosevelt County, Montana. In 1989, William Kuntz (Kuntz) responded to an advertisement for the property, owned by Wilbur and Mildred Fadness, and contacted the real estate agent, Dorothy Cody (Cody), who had the listing. The terms of the listing called for a $25,000 selling price with thirty-percent down with the balance financed by a contract for deed at 9% interest. In August of 1989, Cody prepared a buy-sell agreement and forwarded it to Kuntz in New York state. Kuntz made substantial alterations to the terms of the first agreement. Accordingly, Cody sent another agreement to Kuntz which he altered, signed and then forwarded directly to the Fadnesses. The Fadnesses signed the agreement. The buy-sell agreement was filed with the Clerk and Recorder of Roosevelt County. The altered agreement, provided for a $500 down payment, $5,000 cash at closing with the balance of $19,500 financed for ten-months at 9% interest. The agreement also contained a provision, which Kuntz added, that allowed for a ten-month extension upon payment of the accrued interest due and a payment of two points or $390.

In November of 1989, the Fadnesses signed a warranty deed and the deed was not recorded until approximately one year later on November 4, 1990. Kuntz admitted that he added his wife's name, Anna De La Chapelle Kuntz, to the deed "while it was in escrow." The mortgage was filed in Roosevelt County on October 1, 1990. The provision providing for the interest on the outstanding balance had been lined through by Kuntz.

3

The balance on the note and mortgage was due ten months after closing, in August of 1991. At that time, Kuntz did not exercise his option of extending the note for an additional ten months. In fact, Kuntz did not pay any amount due on the note and mortgage and was in default. Around this time, the Fadnesses were contacted by Allen Sunukjian who introduced himself as an agent of Wolfpack Electronics, and attempted to purchase the Fadness/Kuntz mortgage at a discount. After the Fadnesses declined this offer, they learned that Wolfpack Electronics was owned and controlled by Kuntz, their mortgagee. Mildred Fadness died on December 31, 1991, and Wilbur Fadness was appointed her personal representative for purposes of this action.

In April of 1992, Fadness filed his complaint to foreclose on the property and quiet title. Because the mortgage and note had been altered by Kuntz, Fadness' ability to foreclose on the property was limited to only Kuntz's 1/2 interest in the property and did not extend to his wife's 1/2 interest. Accordingly, Fadness included a claim for fraud, either actual or constructive, and requested that the trier of fact reform the note and mortgage to conform with the agreement of the parties.

On March 10, 1995, the District Court entered final judgment ordering that the mortgage altered by Kuntz be reformed to reflect the 9% interest rate and awarded compensatory damages in the amount of $19,500, the balance due on the note. In a separate hearing following the jury verdict, the jury awarded, and the District Court approved, punitive damages in the amount of $32,000

4

attributable to Kuntz's conduct constituting actual fraud. In another hearing regarding attorney's fees, the District Court awarded Fadness $16,013.95 in attorney's fees and $3,117.82 in costs. In all, Fadness was awarded $74,898.24. Kuntz appeals from these determinations.

1. Did the District Court deny Kuntz a fair trial by ordering him detained in the presence of the jury?

Kuntz asserts that the District Court denied him the right to a fair trial by ordering him to be removed to the back of the courtroom during the punitive damages phase of the proceedings as punishment for contempt. Fadness responds that the District Court is empowered to punish contempt summarily when committed in the presence of the court. Kuntz does not object to the order of contempt, rather, he objects to the fact that he was punished in the presence of the jury. We note that the imposition of summary contempt and punishment is not regarded with favor, whether exercised immediately or after trial and it is particularly tenuous in the presence of the jury. Sacher v. United States (1952), 343 U.S. 1, 8-11, 72 S.Ct. 451, 455-56, 96 L.Ed. 717. "To summon a [party] before the bench and pronounce him guilty of contempt is not unlikely to prejudice [the party]." Sacher, 343 U.S. at 10. Nonetheless, the error may be harmless in certain circumstances. Davenport v. State (Ga. Ct. App. 1995), 454 S.E.2d 536, 537.

In Davenport, the defendant, pro se, was adjudged to be in contempt of court while in the presence of the jury. Davenport, 454 S.E.2d at 537. While the Davenport court noted that the jury "should have been excused during the exchange between the judge and

5

the pro se defendant," the court also determined that under the facts of the case the error was harmless "as the evidence strongly supported the verdict and it is unlikely that the contempt finding affected the result." Davenport, 454 S.E.2d at 537.

We determine that the same is true in the instant case. Kuntz had been warned throughout trial that his conduct was unacceptable and had also been held in contempt for failing to participate in a conference call prior to trial. The court stated to Kuntz that:

> You have complied with none of the rules we have in connection [with discovery] . . . instead you sent a whole volume of papers that is almost impossible to read when you look through them, and it makes an undue burden on [plaintiff's counsel] and on me, and I dislike it. This whole trial has been one big mess as far as discovery is concerned, mainly because of you. I've tried hundreds of lawsuits. I'm an experienced trial lawyer . . . this is the worst case I've ever seen, where one of the clients has come through with a bunch of junk like you have and caused nothing but court delays and trouble and time.

Immediately before the judge held him in contempt Kuntz was warned that he was about to be held in contempt. The following exchange occurred:

The Court: I've ruled now . . . .

Kuntz: I take an exception, Your Honor. I am not---

The Court: I don't want to hear anymore from you. Quiet!

Kuntz: Are you going to give a rebuttal---

The Court: I'm going to have the Sheriff put you in jail if you don't shut up.

Kuntz: Then why don't you do that?

The Court: I will.

Kuntz: Well, then go ahead.

The Court: If you keep talking.

Kuntz: Then go ahead now in front of the jury, Your Honor.

The Court: Alright. Where is the Sheriff?

Kuntz: He's right there.

Clerk of Court: Right there.

The Court: Alright. Take him into custody and put him in the jail. Not in the jail, just put him in custody right back here in the pew---

Sheriff's officer: Alright.

The Court: So that he can hear the proceedings.

Kuntz: Thank you, Your Honor.

The Court: You're welcome.

Kuntz: I'm glad the jury understands how this case has been run.

The Court: Put him in-- right there. That's good enough.

Thus, from this exchange as well as other portions of the record, it is apparent that Kuntz goaded the court into adjudging him guilty of contempt. As in Davenport, the evidence strongly supports the verdict and the award of punitive damages. Accordingly, we hold that adjudging Kuntz guilty of contempt in the presence of the jury was harmless error in the context of this case.

2. Did the District Court err in not ruling on Kuntz's motion that his former counsel turn over his file?

Kuntz asserts that the District Court did not rule on his motion that his former counsel deliver Kuntz's file. Kuntz

7

received these files by the time of trial and Kuntz does not assert that he was prejudiced. Instead, he merely asserts that suitable arrangements should have been resolved before trial. While this may indeed be true, Kuntz has not shown that he was prejudiced by failing to obtain the files at an earlier date. See George v. Fish Creek Irrigation Co. (1959), 135 Mont. 490, 495, 342 P.2d 738, 741. Accordingly, we hold that based on Kuntz's failure to demonstrate prejudice, the District Court did not err in failing to rule on Kuntz's motion.

3. Did the District Court err in excluding certain evidence and exhibits offered by Kuntz?

Our standard of review relating to discretionary trial court rulings, including the admission of evidence at trial, is whether the district court abused its discretion. Hislop v. Cady (1993), 261 Mont. 243, 247, 862 P.2d 388, 390 (citing Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 604). This Court has held that "[i]n the usual case, questions of admissibility of evidence are left largely to the sound discretion of the trial court, subject to review only in cases of manifest abuse." Waller v. Hayden (1994), 268 Mont. 204, 210, 885 P.2d 1305, 1309 (citing Britton v. Farmers Ins. Group (1986), 221 Mont. 67, 86, 721 P.2d 303, 315).

Kuntz asserts that it was error for the District Court to refuse evidence relating to the sale of the subject property from a prior owner, Thelma Berglund, to Kuntz's seller the Fadnesses. He argues that at the time of the sale to him, title to the property was in Berglund's name. Further, Kuntz asserts that it

8

was error to exclude evidence that Fadness was also suing the real estate broker, Cody, and the closing agent, Roger Wimmer, in another suit. He asserts that this evidence related to the "credibility and the underlying dispute, ie [sic] the closing of the Escrow." Kuntz complains that the District Court erred in not admitting an unsigned letter written by Mrs. Fadness. These letters were between Kuntz and the Fadnesses and related to the delinquency on the note.

As to the evidence regarding the Berglund to Fadness contract, the District Court concluded that it was inconsequential to the foreclosure and fraud actions. Kuntz failed to demonstrate that this evidence was relevant and it is within the broad discretion of the district court to exclude irrelevant evidence. Waller, 885 P.2d at 1310.

Likewise, it was within the broad discretion of the court to exclude evidence of the pending suit against Cody and Wimmer. We note that Kuntz fails to cite to where in the record he attempted to introduce evidence of the suit. In any event, Kuntz had the opportunity to cross-examine Cody. Finally, as to the letter from Mildred Fadness, the District Court determined that it was cumulative and that Kuntz had failed to produce it earlier in discovery. The District Court aptly noted that the document could be excluded solely for Kuntz's discovery abuse. Nonetheless, the court allowed Kuntz to argue why the letter was important to Kuntz's defense. Ultimately, the court determined that the there was no new information in the document and that the court was "not

9

going to let [him] go on all afternoon on this stuff." See Waller, 885 P.2d at 1309 (citing Rule 403, M.R.Evid.). As this Court stated in Waller:

> The notion that a decision by the district court is discretionary assumes there is no absolutely correct answer for every evidentiary issue. It assumes that the decision is a judgment call best left to the person closest to the case--the district judge.

Waller, 885 P.2d at 1310. Similarly, in the instant case, the District Court's judgment was exercised within that permissible range best left to the district court.

4. Did the District Court err in rejecting certain New York pattern jury instructions and interrogatories offered by Kuntz?

Our standard of review relating to discretionary trial court rulings, such as the giving of jury instructions, is whether the district court abused its discretion. Hislop, 862 P.2d at 390. Here, the District Court considered fifteen instructions and seven interrogatories proposed by Fadness as well as New York pattern instructions and interrogatories submitted by Kuntz. Even though the instructions and interrogatories submitted by Kuntz did not comply with Montana's District Court Rules, the court considered them and gave New York Pattern Instruction No. 81 over Fadness' objection. In addition, the court submitted several of Kuntz's interrogatories to the jury.

During the jury's deliberations, the jury submitted a list of questions relating to Kuntz's interrogatories to the court for clarification. The court told Kuntz that:

> I intend to advise the jury that they need not consider nor answer the interrogatories propounded to them by the defendant, unless the defendant can show me or tell me

10

why the answers to these questions can be relevant concerning any matter relating to this case. I'll ask you to tell--put in the record why these questions are relevant.

Kuntz made no such showing. Accordingly, the court instructed the jury to cease in its attempt to answer Kuntz's interrogatories.

Thus, from the record, it is clear that the District Court carefully considered the instructions and interrogatories offered by Kuntz. The court was acting within its discretion in refusing Kuntz's offered instructions and interrogatories and in instructing the jury not to answer several of Kuntz's irrelevant interrogatories.

5. Did the District Court err in overruling Kuntz's objection to statements in the closing argument relating to the "lumberyard property?"

Kuntz asserts that Fadness' counsel made an improper reference to the price Kuntz paid for the former UBC Lumberyard in Wolf Point. The court directed Kuntz that "[n]ow I'm not going to let you get up here and give a speech. You have not made a definite objection. [Plaintiff's counsel] [y]ou may proceed." Furthermore, we note that in objecting, Kuntz was able to correct any misstatement of the purchase price. We determine that the District Court did not abuse its discretion in overruling Kuntz's objection to statements regarding the "lumberyard property."

6. Did the District Court award excessive fees to Fadness?

Under the terms of the mortgage, Fadness is entitled to costs and reasonable attorney's fees. Kuntz asserts that the fees and costs awarded against him were excessive. A hearing was held to determine the amount of fees and costs due to Fadness. At the

11

hearing, Kuntz offered the testimony of witnesses regarding the fees charged by other attorneys in the area in an attempt to challenge the fees requested by Fadness' counsel.

During the hearing, the court also questioned the fees and reduced the amount of fees and costs for travel to Wolf Point as well as the amount of fees requested for the deposition of real estate agent Cody. The District Court also stated that "Mr. Kuntz, I think your actions in this matter are the very things that made this case so complicated." Thus, from the record it is clear that the District Court considered all of the evidence and testimony presented and did not abuse its discretion in its award of costs and attorney's fees.

7. Did the District Court err in not granting Kuntz's motion for a directed verdict?

Kuntz asserts that the District Court improperly denied his motion for a directed verdict. A motion for a directed verdict is properly granted only in the complete absence of any evidence to warrant submission to the jury, and all inferences of fact must be considered in the light most favorable to the opposing party. If the evidence viewed in a light most favorable to Fadness indicates that reasonable men could differ as to the conclusions drawn from the evidence a directed verdict is not proper. Guertin v. Moody's Market (1994), 265 Mont. 61, 69, 874 P.2d 710, 715. From the record, and from the jury's verdict, it is apparent that there was sufficient evidence to overcome Kuntz's motion for a directed verdict. Accordingly, we hold that the District Court did not err in denying Kuntz's motion for a directed verdict.

12

8.    Did the District Court err in not allowing Kuntz to make a motion for a new trial at the conclusion of the jury trial?

Kuntz asserts that he was not allowed to make a motion for a new trial in court because he was in the custody of the sheriff at the close of the case.  We note that pursuant to Rule 59(b), M.R.Civ.P., a party has ten days after the service of notice of entry of judgment within which to file a motion for a new trial. Accordingly, Kuntz was not prejudiced because he was not able to move for a new trial in court.  Kuntz had ten days after the service of notice of entry of judgment to move for a new trial.

Under Rule 59(a), M.R.Civ.P., Kuntz was required to "state with particularity the grounds [for the motion for a new trial], it not being sufficient merely to set forth the statutory grounds. . ."  Here, Kuntz made no such motion and did not articulate any particular grounds whatsoever to the District Court.   In fact, Kuntz did not even file a motion for a new trial with the district court.   Rather, Kuntz asserts that "it would have been an [sic] useless exercise for Defendant to reduce to writing, a Motion which the District Judge would not allow to be made in Court."

We do not agree with Kuntz's assertion that it would have been a "useless exercise" to file a motion for a new trial.   Kuntz's obligation to comply with Rule 59(b), M.R.Civ.P., was not suspended merely because he was dissatisfied with the District Court's rulings.   In failing to properly make a motion for a new trial, Kuntz is deemed to have waived any objection.  Accordingly, we hold that Kuntz waived this issue on appeal due to his failure to file a motion for a new trial pursuant to Rule 59, M.R.Civ.P., with the

13

District Court.

Affirmed.

_W. William Bayhurst_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Karla M. Gray_

_Terry Trieweiler_
Justices

14