FILED

11/30/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0248

DA 18-0248

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 306

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JORY RUSSELL STRIZICH,

      Defendant and Appellant.


| | |
|---|---|
| APPEAL FROM: | District Court of the First Judicial District,<br>In and For the County of Lewis and Clark, Cause No. BDC 2017-59<br>Honorable Michael F. McMahon, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens, Smith & Stephens, P.C., Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Tammy K Plubell, Appellate Services Bureau Chief, Helena, Montana

          Leo Gallagher, Lewis and Clark County Attorney, Helena, Montana


          Submitted on Briefs: September 1, 2021

                  Decided: November 30, 2021

Filed:

              _____
                           Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      Jory Russell Strizich and Kaleb Daniels burglarized a cabin near Wolf Creek, Montana, in December 2016.  A Lewis and Clark County jury convicted Strizich of aggravated burglary, criminal trespass to property, and criminal possession of dangerous drugs.  He appeals, challenging the First Judicial District Court's admission of flight evidence and its jury instructions on the mental state elements of the charged offenses.  We affirm.

¶2      We consider the following restated issues on appeal.

1.  *Is Strizich entitled to a new trial because the District Court admitted evidence that he fled from a rehabilitation center three weeks after the burglary?*

2.  *Has Strizich demonstrated plain error in the District Court's jury instructions to which he did not object at trial?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3      On December 28, 2016, Marshall and Sonja Buus drove to their cabin near Wolf Creek.  When they pulled into the driveway, they discovered an unfamiliar Dodge Durango.  They observed lights on in the cabin and suspected someone had broken in.  The Buuses parked their vehicle and saw Daniels and Strizich fleeing the cabin on foot.  Marshall ran after Daniels and caught up to him near the Durango.  Realizing that Daniels was armed, Sonja ran to Marshall and handed him a pistol.  Daniels and Marshall pointed their guns at each other and yelled while Sonja called 911.  Strizich ran down the driveway and hid behind some trees but returned to the Durango, ostensibly to "de-escalate the situation" between Marshall and Daniels.  As Strizich approached, Marshall fired two warning shots in his direction and shot Strizich in the leg.  Daniels and Marshall then

2

opened fire on each other as Strizich crawled away in the snow. The wounded Strizich made his way to a nearby cabin owned by the Mayerniks and hid inside.

¶4 The Lewis and Clark County Sheriff's Office found Strizich at the Mayerniks' cabin, arrested him, and transported him to St. Peter's Hospital in Helena. Strizich underwent surgery for a broken tibia and was taken to Elkhorn Healthcare and Rehabilitation in Clancy. While recovering at Elkhorn, Strizich learned that there was an active arrest warrant for his participation in the burglary. On January 21, 2017, Strizich fled Elkhorn with assistance from three acquaintances: William Lamere, a juvenile; Jennifer Cabell; and Daniel Gonzalez. Lamere drove Strizich away from Elkhorn, while Cabell and Gonzalez followed behind in a separate vehicle. Following a high-speed chase, Strizich again was taken into custody, and Lamere was charged with criminal endangerment in the Lewis and Clark County Youth Court.

¶5 In a separate trial, Daniels was convicted of attempted deliberate homicide, aggravated burglary, and tampering with or fabricating physical evidence. We affirmed his conviction. *State v. Daniels*, 2019 MT 214, 397 Mont. 204, 448 P.3d 511.

¶6 The day after the Buus burglary, Lewis and Clark County Sheriff's officers searched Strizich's Durango. Inside they found two handguns in the front passenger's seat; two cell phones; a set of bolt cutters; a set of binoculars; a pair of pliers; a glass pipe containing methamphetamine; and a backpack containing ammunition, a butane torch, and a box cutter.

¶7 At Strizich's trial, Marshall testified that during his standoff with Daniels he noticed Strizich walking up the driveway. Marshall yelled at Strizich to "stay the hell away," but

3

Strizich continued approaching him. Marshall testified that he did not know whether Strizich was armed but saw something black sticking out of his back pocket. Marshall claimed that Strizich continued approaching despite Marshall pointing his pistol toward him. When Strizich got within five feet of him, Marshall fired two warning shots into the ground, and Strizich stepped into one of the bullets.

¶8 The State presented pictures of the cabin after the burglary. Sonja Buus testified that many of the Buuses' belongings were out of place and that the condition of the cabin was different from how she left it. Sonja said someone had opened the cupboards, closets, and nightstand drawers, removed the vacuum from the hallway closet, unplugged the television, and left a pile of the Buuses' items, including a fuel canister, ammunition, and torches, on the kitchen island. The State's pictures showed a stack of the Buuses' guns by the back door of the cabin and a hammer and bolt cutters that did not belong to them. The State also presented pictures captured by the Buuses' game camera. Lewis and Clark County Detective William Pandis identified Daniels and Strizich in these images and testified that they were photographed walking away from the cabin at approximately 2:12 p.m. on December 28, 2016.

¶9 The State introduced evidence pertaining to the Mayernik cabin as well. Dale Mayernik testified that someone broke in through the window, ransacked the medicine cabinet, and lit a fire in the fireplace. Among other items, Dale discovered a silver belt buckle while cleaning his cabin. Kelsey Lippert, a resident of Carter, Montana, later testified that the belt buckle was stolen from him along with his truck approximately one month before the Buus burglary. He recognized the belt buckle because of its unique

4

design—it depicts the Montana Grizzlies logo and the number "42," which was Lippert's jersey number when he played football for the Grizzlies.

¶10 The State called several witnesses to Strizich's escape from Elkhorn. On the first day of trial, defense counsel Brian Norcross made the following objection outside the presence of the jury:

> MR. NORCROSS: In terms of the fleeing from Elkhorn, I'm going to object to that. That's not a listed offense, he's not charged with escape. So it has nothing to do with the burglary that he's alleged to have committed. It is . . . other acts that the State is trying to bring in simply to establish that my client is a bad person or that he was fleeing from a crime.

The State responded that the evidence was relevant to show consciousness of guilt. Norcross argued that Strizich's escape did not show consciousness of guilt because Strizich left Elkhorn "three weeks after" the alleged offense. The court overruled the objection:

> THE COURT: The Court believes that the evidence with respect to Mr. Strizich's fleeing from the Elkhorn facility is relevant because it tends to show consciousness of guilt and therefore tends to prove the commission of the crimes charged and the defendant's responsibility for it. Rule 404(b), as the Montana Supreme Court has indicated in these situations, as to other crimes does not apply, and that's State versus Moore, 254 Mont. 241.
> So the Court made its ruling. Mr. Norcross, you have made your record. Is there anything else you want to put on the record?
>
> MR. NORCROSS: I guess, Judge, what I want to put on the record is that all the cases cited by the State involve flight immediately after the commission of the crime. This was not flight after the commission of a crime, it was three weeks later. . . . [S]o I'm just going to preserve my objection to that as well just for the record.

¶11 At the end of the third day of trial, the State notified the court that it planned to move for judicial notice of Lamere's youth court dispositional order the following day. Defense counsel again objected:

5

MR. NORCROSS: I think I can make the objection now, Judge, that this is a -- Mr. Strizich was a passenger, was not a driver, was not charged with any offense related to any high-speed chase, anything in the vehicle or anything else. If the State wants to say that this individual committed a crime going on a high-speed chase, I think it's not relevant to the charge Mr. Strizich is facing now.

¶12 Elena Applin, a certified nursing assistant for Elkhorn, testified that Strizich left the rehabilitation center through a window after two people visited him on January 21, 2017. Lewis and Clark County Sheriff's Deputies Greg Holmlund and Joshua Schmidt testified that Lamere led officers on a high-speed chase on Interstate 15 after he picked Strizich up from Elkhorn. Holmlund reported that he drove 90 to 95 miles an hour to keep up with Lamere. Schmidt testified that Lamere reached speeds "in excess of 135 miles an hour" before eventually crashing on Recreation Road outside Wolf Creek. Holmlund also reported that a second vehicle, occupied by Cabell and Gonzalez, followed Lamere closely, ostensibly attempting to block the officers from reaching Lamere's vehicle. Officers arrested Lamere and Strizich after they crashed, but Cabell and Gonzalez escaped. Lamere later admitted to the crime of criminal endangerment in youth court.

¶13 The State then moved the court to take judicial notice of Lamere's dispositional order from youth court:

> MR. GALLAGHER: Your Honor, I move the Court [to] take judicial notice of the petition and the dispositional order in cause DJ 2017-1 in the Youth Court of this district.
>
> .   .   .
>
> THE COURT: I believe that Deputy Schmidt, along with Deputy Holmlund provided that necessary background.
>     Mr. Norcross?

6

MR. NORCROSS: Again, Judge, I totally object to the introduction of any of this into evidence. So I have I think my continuing objection to that.

The court then took judicial notice of Lamere's youth court dispositional order pursuant to M. R. Evid. 201(d):

THE COURT: [A]t this time the Court is going to notify you that it has taken judicial notice of cause number DJ 2017-1, in the matter of William Lamere . . . Mr. Lamere admitted to the offense of criminal endangerment in that on or about January 21, 2017, at approximately 6:46 p.m., he knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to another when he was observed driving a silver Honda four-door passenger car with a male in the passenger seat in excess of 135 miles an hour northbound on Interstate 15 through the Sieben Flats area while being pursued by law enforcement vehicles who had their lights on. After he exited the interstate highway onto Recreation Road driving 65 miles an hour, he lost control of the car and spun into a snowbank. . . .

You are further instructed, ladies and gentlemen, that you may, but are not required to, accept as conclusive any fact judicially noticed.

¶14 Strizich testified that he did not plan to burglarize the Buuses' cabin. He claimed that on December 28, 2016, he planned to get "out of town for the day." He met Daniels in Great Falls, and they decided to drive to Holter Lake in Strizich's Durango. En route, Daniels convinced Strizich to drive to the Wolf Creek area. Somewhere on Little Wolf Creek Road, Strizich realized the Durango was low on gas, and he and Daniels searched for a nearby cabin to purchase fuel and ask for directions. Strizich testified that they stopped at the Buuses' cabin because they saw fresh tire tracks in the snow and believed someone would be home. Strizich said he gave Daniels $10 and told him to buy gas from the cabin's occupants and get directions to the nearest gas station. When Daniels did not return to the car, Strizich walked over to the cabin and saw Daniels burglarizing it.

Strizich claimed that he entered the cabin "to talk sense into" Daniels and, while arguing with him, the Buuses arrived.

¶15 Strizich also tried to explain the items found in his Durango and the cabins. He testified that the backpack and all other items belonged to Daniels, except for the bolt cutters, the binoculars, and the glass pipe. Strizich maintained that, before leaving Great Falls, he drove Daniels to his car so that Daniels could retrieve some of his belongings. Strizich claimed that he saw Daniels grab a coat and a backpack out of his car but "didn't see everything because [he] wasn't paying exact attention." As Daniels was moving things from his car into Strizich's Durango, Strizich saw a set of bolt cutters that he previously lent Daniels and asked him to "throw them in [Strizich's] vehicle" if "he was done with them." He also testified that he did not see Daniels bring any firearms or ammunition and that he believed the officers removed those items from Daniels's backpack during their search. Strizich further testified that he did not steal Lippert's belt buckle but that he bought it for $35 through Facebook's online marketplace.

¶16 The jury found Strizich guilty of aggravated burglary, criminal possession of dangerous drugs, and criminal trespass to property. The District Court sentenced him to sixty years in the Montana State Prison with fifteen years suspended.

## STANDARDS OF REVIEW

¶17 A district court has broad discretion in determining the admissibility of evidence, and we review its rulings for abuse of discretion. *Daley v. Burlington Northern Santa Fe Ry.*, 2018 MT 197, ¶ 3, 392 Mont. 311, 425 P.3d 669 (citation omitted). "An abuse of discretion occurs when the district court acts arbitrarily or unreasonably, resulting in

8

substantial injustice." *State v. Holland*, 2019 MT 128, ¶ 8, 396 Mont. 94, 443 P.3d 519 (citation omitted).

¶18 We review a trial court's jury instructions for abuse of discretion. *State v. Dobrowski*, 2016 MT 261, ¶ 6, 385 Mont. 179, 382 P.3d 490 (citation omitted). We consider whether "the instructions, as a whole, fully and fairly instruct the jury on the law applicable to the case." *Dobrowski*, ¶ 6 (citation omitted). District courts have "broad discretion when instructing a jury, and reversible error occurs only if the jury instructions prejudicially affect the defendant's substantial rights." *State v. Ring*, 2014 MT 49, ¶ 13, 374 Mont. 109, 321 P.3d 800 (citation omitted).

¶19 Generally, we do not review issues raised for the first time on appeal. *State v. Favel*, 2015 MT 336, ¶ 13, 381 Mont. 472, 362 P.3d 1126. When a defendant's fundamental rights are at stake, we may choose, nonetheless, to invoke plain-error review where failing to review the claimed error may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Favel*, ¶ 13 (citation omitted). We invoke plain-error review "sparingly, on a case-by-case basis." *State v. Johns*, 2019 MT 292, ¶ 21, 398 Mont. 152, 454 P.3d 692 (citation omitted).

## DISCUSSION

¶20    *1. Is Strizich entitled to a new trial because the District Court admitted evidence of his flight from Elkhorn?*

¶21    Strizich argues that the evidence of his escape from Elkhorn and the court's related judicial notice of Lamere's youth court dispositional order were (1) irrelevant, in violation

9

of Rule 402, M. R. Evid.; (2) unfairly prejudicial and unnecessarily cumulative, in violation of Rule 403, M. R. Evid.; and (3) used as subsequent bad acts, in violation of Rule 404(b), M. R. Evid.[1]

¶22 *State v. Moore*, 254 Mont. 241, 836 P.2d 604 (1992), resolves Strizich's last contention. We held there that evidence of flight or concealment does not violate Rule 404(b) when admitted to prove consciousness of guilt. *Moore*, 254 Mont. at 245, 836 P.2d at 607; *see also State v. Berosik*, 1999 MT 238, ¶ 27, 296 Mont. 165, 988 P.2d 775 ("Rule 404(b), M. R. Evid., does not apply to evidence of consciousness of guilt."). In *Moore*, we reversed the district court for excluding as subsequent bad acts evidence that the defendant in a homicide case "cleaned blood from the camper, discarded bullets and carpet, covered and repaired bullet holes, [and] spilled battery acid . . . to cover or clean material" in the days following the murder. *Moore*, 254 Mont. at 244-46, 836 P.2d at 606-07. Here, the State offered evidence of Strizich's flight to show consciousness of guilt. Pursuant to *Moore*, this evidence does not violate Rule 404(b), and the District Court did not abuse its discretion in that regard. Therefore, we analyze the flight evidence under the other Rules of Evidence Strizich raises.

---

[1] Strizich also makes a passing contention that judicial notice of Lamere's youth court admission violated his constitutional right to confront witnesses. We have refused to consider a Confrontation Clause argument raised for the first time on appeal. *State v. Bonamarte*, 2009 MT 243, ¶ 16, 351 Mont. 419, 213 P.3d 457. Strizich did not raise this argument in the District Court and therefore failed to preserve it for appeal. Regardless, non-testimonial evidence does not trigger the Confrontation Clause. *State v. Carter*, 2005 MT 87, ¶¶ 22-26, 326 Mont. 427, 114 P.3d 1001. Business and public records are not testimonial. *Melendez-Diaz v. Mass.*, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539-40 (2009); *accord City of Kalispell v. Omyer*, 2016 MT 63, ¶ 24, 383 Mont. 19, 368 P.3d 1165. Lamere's youth court dispositional order is a public record that the trial judge read to the jury. It is not testimonial and therefore did not trigger the Confrontation Clause.

### a. Rule 402

¶23 All relevant evidence is generally admissible; irrelevant evidence is not. M. R. Evid. 402. Evidence is relevant if it tends "to make the existence of any fact that is of consequence to the determination of the action more [or less] probable than it would be without the evidence." M. R. Evid. 401. Flight evidence "is relevant because it tends to show consciousness of guilt and therefore tends to prove the commission of the crime charged and the defendant's responsibility for it." *Moore*, 254 Mont. at 245, 836 P.2d at 607. "Flight or concealment may be considered by the jury as a circumstance tending to prove the consciousness of guilt." *Moore*, 254 Mont. at 245, 836 P.2d at 607 (citing *State v. Walker*, 148 Mont. 216, 224, 419 P.2d 300, 305 (1966)).

¶24 Strizich argues the evidence of flight from Elkhorn is not probative of his consciousness of guilt because the escape was too attenuated from the charged offenses arising from the burglary of the cabin. At trial, Strizich objected to the relevance of this evidence on the ground that: "[I]t has nothing to do with the burglary that [Strizich is] alleged to have committed." His trial counsel argued that the delay between the date of the burglary and Strizich's escape from Elkhorn distinguishes this case from cases where evidence of immediate flight was relevant and admissible. Strizich takes up this same argument on appeal.

¶25 "Flight is an attempt to avoid arrest *or prosecution*." *State v. Burk*, 234 Mont. 119, 122, 761 P.2d 825, 827 (1988) (emphasis in original) (citation omitted). The State presented evidence in *Burk* that the defendant disappeared on the date of his original trial to avoid prosecution. *Burk*, 234 Mont. at 122, 761 P.2d at 827. The district court admitted

11

this evidence as evidence of flight. *Burk*, 234 Mont. at 122, 761 P.2d at 827. Because of the delay between the date of Burk's offense and the date of the alleged "flight," we commented on the issue of immediacy:

> In the instant case, immediacy is not an issue. Because it was several months after the arrest and charges that defendant disappeared, the inference that defendant tried to escape arrest is negated. However, we are not convinced that the evidence negates the possibility that defendant was trying to avoid *prosecution*, since he disappeared on the day of trial. Thus, the immediacy element is not at issue. It should be noted, however, that a defendant must do more than merely fail to show up for the flight evidence to be proper.

*Burk*, 234 Mont. at 122-23, 761 P.2d at 827 (citations omitted) (emphasis added). We observed that, because Burk's failure to appear was coupled with an "inherently unbelievable" story regarding his absence, "it [was] reasonable that a jury could infer a consciousness of guilt." *Burk*, 234 Mont. at 123, 761 P.2d at 827-28.

¶26 Strizich's flight from Elkhorn was not isolated. He fled after learning there was an arrest warrant issued in connection with the Buus burglary. Strizich testified, "I didn't want to go to jail, and I was just scared. I didn't want to go to jail." He acknowledged that his flight from Elkhorn was premeditated: "I planned it. You know, I had some friends come down and get me out of there." Strizich testified that he escaped through a window with his friends' assistance and then laid down in Lamere's vehicle while Lamere led the police on a high-speed chase. From this evidence, a jury reasonably could infer consciousness of guilt. The length of time between the burglary and the flight is immaterial because the evidence is probative of Strizich's desire to avoid legal responsibility for the charged offense.

12

¶27 We conclude that the District Court did not abuse its discretion by overruling Strizich's Rule 402 relevance objections.

### b. Rule 403

¶28 Rule 103(a)(1), M. R. Evid., requires "a timely objection . . . stating the specific ground of the objection." *See also State v. Baker*, 2000 MT 307, ¶ 29, 302 Mont. 408, 15 P.3d 379. A trial court "should not be put in error when it was never given a chance to rule on the specific objection." *Baker*, ¶ 29 (citation omitted). We additionally have been clear that "a party may not raise new arguments or change his legal theory on appeal." *State v. Bar-Jonah*, 2004 MT 344, ¶ 93, 324 Mont. 278, 102 P.3d 1229 (citation omitted). When a party fails to make a specific, contemporaneous objection at trial, Rule 103(d), M. R. Evid., allows the Court, nonetheless, to exercise plain-error review in its discretion. *Zimmerman v. Bozeman Prod. Credit Ass'n*, 233 Mont. 156, 160, 759 P.2d 166, 169 (1988).

¶29 Strizich did not make a Rule 403 objection at trial. Though he argued relevance, he did not ask the court to exclude the flight evidence because it was unfairly prejudicial. He raised Rules 402 and 404(b), but he never mentioned prejudice or Rule 403 and did not give the District Court a "chance to rule on" the balance of probative value against unfair prejudice. Citing *State v. Fleming*, 2019 MT 237, 397 Mont. 345, 449 P.3d 1234, Strizich now asserts that the District Court was obliged to conduct such a balancing analysis when it overruled his relevance objection. In *Fleming*, however, the defendant filed a pre-trial motion to suppress evidence of his prior conviction on three separate grounds—one of which was Rule 403. *Fleming*, ¶ 23. The trial court held a hearing, at which Fleming argued that the "previous conviction was highly and unfairly prejudicial[,]" and the court

13

overruled his objection. *Fleming*, ¶¶ 5, 34. The trial court in *Fleming* did not undertake a Rule 403 analysis *sua sponte*, as Strizich seems to suggest. In *Busta v. Columbus Hosp.*, 276 Mont. 342, 353-54, 916 P.2d 122, 129 (1996), we specifically declined to review a Rule 403 argument on appeal where the defendant made a relevance objection but not a Rule 403 objection at trial. Strizich did not preserve his Rule 403 argument for appeal.

¶30 Citing *State v. Tome*, 2021 MT 229, 405 Mont. 292, 495 P.3d 54, *Busta*, and *State v. Rogers*, 2013 MT 221, 371 Mont. 239, 306 P.3d 348, the Dissent contends that Strizich properly preserved his Rule 403 objection. These cases do not, however, lend Strizich any support. In *Tome*, the defendant "specifically argued that his right of confrontation would be violated[,]" and the district court specifically ruled on that objection. *Tome*, ¶¶ 13-14. "At the beginning of the second trial, Tome again objected, stating: . . . 'We believe it's a due process and confrontation violation[.] . . . We think we have a right to confront.'" *Tome*, ¶ 19. Strizich, objecting four times to the flight evidence, did not once suggest that the evidence was "unfairly prejudicial" or mention Rule 403, nor did the trial judge rule on a Rule 403 objection.

¶31 *Busta* and *Rogers* demonstrate that we have applied the appropriate scope of review here. In *Busta*, we reviewed a relevancy objection even though Busta never said the word "irrelevant" at trial. *Busta*, 276 Mont. at 354, 916 P.2d at 129. We construed the objection that the exhibit "was written by a person who was not an interested party to this lawsuit" as stating that the exhibit was irrelevant. *Busta*, 276 Mont. at 354, 916 P.2d at 129. Similarly, Strizich's trial counsel said, "he's not charged with escape[, s]o *it has nothing to do with* the burglary." The trial judge construed the words "nothing to do with" as stating

14

a Rule 402 relevancy objection and later ruled on that specific objection: "Mr. Strizich's fleeing from the Elkhorn facility is *relevant* because it tends to show consciousness of guilt." In *Rogers*, we reviewed a Rule 404(b) argument where the defendant asked, "do you want to prosecute me on my past?" *Rogers*, ¶ 34. Strizich's trial counsel stated in like fashion, "it is . . . other acts that the State is trying to bring in simply to establish that my client is a bad person or that he was fleeing from a crime." The District Court construed these words as making a Rule 404(b) objection and later ruled on that specific objection, stating: "Rule 404(b) . . . does not apply." We review Strizich's preserved Rules 402 and 404(b) objections here as "apparent from the context." *See* M. R. Evid. 103. But neither *Rogers* nor *Busta* suggests an appellate court read unstated objections into the trial transcript. Quite the opposite, *Busta* expressly prohibits this Court from doing so. *See Busta*, 276 Mont. at 353-54, 916 P.2d at 129.

¶32 We of course permit parties to "bolster their preserved issues with additional legal authority or to make further arguments within the scope of the legal theory articulated [at trial]." *State v. Montgomery*, 2010 MT 193, ¶ 12, 357 Mont. 348, 239 P.3d 929. Strizich, though, is not supporting an unfair prejudice trial theory with "additional authority" or "further[ing an] argument[ ] within the scope" of the same legal theory. He instead presents a new theory of inadmissibility for the first time on appeal; this we consistently do not allow. *See Bar-Jonah*, ¶ 93; *State v. Heath*, 2004 MT 58, ¶ 39, 320 Mont. 211, 89 P.3d 947; *State v. Martinez*, 2003 MT 65, ¶ 17, 314 Mont. 434, 67 P.3d 207; *State v. Weaselboy*, 1999 MT 274, ¶ 16, 296 Mont. 503, 989 P.2d 836.

15

¶33 Strizich does not argue on appeal that we should invoke plain-error review. "To invoke plain-error review, 'we still require the assertion of plain error to be raised and argued on appeal.'" *In re B.H.*, 2018 MT 282, ¶ 15, 393 Mont. 352, 430 P.3d 1006 (quoting *In re B.O.T.*, 2015 MT 40, ¶ 22, 378 Mont. 198, 342 P.3d 981). We have refused to invoke the common-law doctrine of plain-error review when a party raises such a request for the first time in a reply brief. *See, e.g.*, *Fleming*, ¶ 40; *State v. Johnson*, 2010 MT 288, ¶ 13, 359 Mont. 15, 245 P.3d 1113; *State v. Raugust*, 2000 MT 146, ¶ 19, 300 Mont. 54, 3 P.3d 115; *State v. Hagen*, 283 Mont. 156, 159, 939 P.2d 994, 996 (1997). Strizich did not do that, either. He has not asked the Court to review the flight evidence for plain error. We examine the issue with the apposite circumspection to determine whether Strizich has made the case for our discretionary review.

¶34 Relevant evidence "*may* be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, M. R. Evid. (emphasis added). "District courts have broad discretion to weigh the relative probative value of evidence against the risk of unfair prejudice." *State v. Madplume*, 2017 MT 40, ¶ 32, 386 Mont. 368, 390 P.3d 142. Rule 403 is "a fact-specific balancing test." *State v. Haithcox*, 2019 MT 201, ¶ 16, 397 Mont. 103, 447 P.3d 452. The district court is in the best position to determine whether evidence is unfairly prejudicial. *See Vintage Constr., Inc. v. Feighner*, 2017 MT 109, ¶ 20, 387 Mont. 354, 394 P.3d 179; *O'Connor v. George*, 2015 MT 274, ¶ 17, 381 Mont. 127, 357 P.3d 323; *Benjamin v. Torgerson*, 1999 MT 216, ¶ 15, 295 Mont. 528, 985 P.2d 734;

*State v. Couture*, 1998 MT 137, ¶ 18, 289 Mont. 215, 959 P.2d 948; *State v. Ford*, 278 Mont. 353, 361, 926 P.2d 245, 249-50 (1996); *Waller v. Hayden*, 268 Mont. 204, 210, 885 P.2d 1305, 1308 (1994). This Court does not weigh the facts in isolation of district court review.

¶35 Probative evidence always is prejudicial to some degree. *Madplume*, ¶ 33 (citation omitted). "Evidence rises to the level of being *unfairly* prejudicial 'only if it arouses the jury's hostility or sympathy for one side without regard to its probative value, if it confuses or misleads the trier of fact, or if it unduly distracts from the main issues.'" *Madplume*, ¶ 33 (emphasis added) (quoting *State v. Hicks*, 2013 MT 50, ¶ 24, 369 Mont. 165, 296 P.3d 1149). Even if evidence rises to the level of unfair prejudice, "the Rule 403 balancing test favors admission[.]" *Madplume*, ¶ 33.

¶36 We considered whether flight evidence violated Rule 403 in *Burk*. We stated:

> There is probative value to flight evidence. The fact that the jury could reasonably interpret the defendant's actions as flight in avoidance of prosecution would support the instruction on flight. Burk had ample opportunity to tell the jury his reasons for absence and to dissipate any prejudice the jury might attach to the fact that Burk was not present [at his original trial].

*Burk*, 234 Mont. at 125, 761 P.2d at 828 (internal citations and quotations omitted). Strizich too had ample opportunity to "dissipate any prejudice" by explaining the reasons for his flight from Elkhorn. Strizich testified, though, that he escaped Elkhorn to avoid arrest for the Buus burglary, effectively bolstering the probative value of the flight evidence.

¶37 Strizich argues that he was unfairly prejudiced when the District Court took judicial notice of Lamere's youth court dispositional order. By that time, the jury had heard the testimonies of nursing assistant Applin and Deputies Holmlund and Schmidt. Applin's testimony established that two friends visited Strizich right before Strizich fled through a window. Holmlund's testimony described the beginning of the pursuit and the second vehicle acting as a "blocker." As Holmlund did not pursue Lamere onto Recreation Road, Schmidt's testimony described the final pursuit and ultimately the crash on Recreation Road. This told the story of Strizich's flight from Elkhorn. The only additional information in the court's judicial notice was Lamere's admission to the offense of criminal endangerment. Otherwise, the jury already heard details of the pursuit, including Lamere's driving speed.

¶38 Strizich acknowledges that some evidence of his flight may have been permissible but argues it went too far. We agree with Strizich that Lamere's youth court offense added little probative value to the charges Strizich faced.[2] But this is precisely the point of requiring a specific objection at trial. Had he argued undue prejudice from certain facts or details, the trial court may have been persuaded to limit the testimony. On the record as it stands, however, Strizich has not met his burden to demonstrate that either the testimony

_____

[2] We also have observed that the "interest of justice is perhaps best served if [flight evidence] is reserved for counsel's argument, with little if any comment by the bench." *State v. Hall*, 1999 MT 297, ¶ 45, 297 Mont. 111, 991 P.2d 929. Strizich does not raise a *Hall* argument on appeal. Strizich did not make a "*Hall*-type objection to the flight evidence during [trial,]" either. *See State v. Davis*, 2000 MT 199, ¶¶ 37-39, 300 Mont. 458, 5 P.3d 547 (where the defendant did not argue at trial that the court's instruction constituted an "improper comment on the evidence"); *Baker*, ¶ 30 ("We decline to address Baker's objection that the flight instruction was a comment on the evidence since that objection is raised for the first time on appeal"). We do not address whether taking judicial notice is a comment on the evidence.

of the high-speed chase or the evidence of Lamere's disposition rendered the trial fundamentally unfair. The jury received overwhelming evidence of Strizich's involvement in the crimes, including the items in Strizich's Durango, the state of the Buuses' cabin, the state of the Mayerniks' cabin, the photographs of Strizich and Daniels at the Buuses' cabin, and Lippert's stolen belt buckle. Strizich intentionally took off with Lamere and laid in the back seat, from which the jury could infer he sought to avoid arrest and prosecution for those offenses. And Strizich readily acknowledged that he fled Elkhorn to avoid legal accountability for the Buus burglary. The addition of Lamere's youth court dispositional order and details of the flight did not "so arouse[ ] the jury's hostility or sympathy for one side without regard to its probative value, . . . confuse[ ] or mislead[ ] the trier of fact, or . . . unduly distract[ ] from the main issues" to render the trial fundamentally unfair. *See Madplume*, ¶ 13. *See also State v. Shaw*, 199 Mont. 248, 253, 648 P.2d 287, 290 (1982) (finding no unfair prejudice in evidence tending to show consciousness of guilt).

¶39 Strizich has failed to "firmly convinc[e]" us that the flight evidence presented to the jury amounted to constitutional deprivation of a fair trial or undermined the integrity of the judicial process to such an extent that its admission requires reversal. *See State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 459 P.3d 854 (describing a defendant's burden for plain-error review).

¶40 Were we in any event, as the Dissent suggests, to review admission of the evidence for harmless error, Strizich still cannot prevail. "We use the cumulative evidence test to determine whether the error was harmless under the circumstances." *State v. Santillan*, 2017 MT 314, ¶ 35, 390 Mont. 25, 408 P.3d 130 (citing *State v. Van Kirk*, 2001 MT 184,

19

¶ 43, 306 Mont. 215, 32 P.3d 735); *State v. Kaarma*, 2017 MT 24, ¶ 89, 386 Mont. 243, 390 P.3d 609 (citing *Van Kirk*, ¶ 43). Key inquiries under the *Van Kirk* test are whether the evidence "tend[ed] to prove an element of the crime," *Van Kirk*, ¶ 45, and whether "the fact-finder was presented with admissible evidence that proved the same facts as the tainted evidence," *Santillan*, ¶ 35 (citing *Van Kirk*, ¶ 43). "[W]here the tainted evidence does *not* go to the proof of an element of the crime charged, *and* there is *no other admissible evidence* tending to prove the particular fact at issue," then the State must show that there is "no reasonable possibility the tainted evidence might have contributed to the defendant's conviction[.]" *Van Kirk*, ¶ 46 (emphasis added); *accord State v. Forsythe*, 2017 MT 61, ¶ 43, 387 Mont. 62, 390 P.3d 931 ("If the tainted evidence is *the only evidence* tending to prove a fact other than an element of the charged offense, then the error is harmless if the State can show . . . the tainted evidence could not reasonably have contributed to the conviction.") (emphasis added); *State v. Payne*, 2011 MT 35, ¶¶ 37-38, 359 Mont. 270, 248 P.3d 842 ("Merifield's evidence did not go to an element of Payne's charged offense[.] *No untainted evidence* was presented[.] Therefore, . . . the State must demonstrate that there was no 'reasonable possibility' that the jury relied on Payne's lack of compliance with Connecticut law to convict him.") (emphasis added).

¶41 The State offered, and the District Court admitted, evidence of Strizich's flight to show consciousness of guilt, not to prove an element of the crime charged. And, as Strizich acknowledges, some of the flight evidence was admissible for that purpose. Harmless error review here thus passes both threshold inquiries. The Dissent does not address the considerable evidence of Strizich's guilt we already have discussed. *See supra* ¶ 38.

20

Giving Strizich's claim on appeal the most generous review, the error was harmless under the cumulative evidence test because there was other admissible evidence proving consciousness of guilt and the evidence did not go to an element of the crimes charged. In the final analysis, Strizich has not persuaded us that the flight evidence carried such unfair prejudice as to "prompt the jury to decide the case on an improper basis." *State v. Stewart*, 2012 MT 317, ¶ 68, 367 Mont. 503, 291 P.3d 1187 (citing *State v. Belanus*, 2010 MT 204, ¶ 14, 357 Mont. 463, 240 P.3d 1021).

¶42 Strizich fails to establish that by admission of the flight evidence he "was prejudiced and his right to a fair trial violated." *See State v. Byrne*, 2021 MT 238, ¶ 30, 405 Mont. 352, 495 P.3d 440; § 40-20-701(1) and (2), MCA. We decline to require a new trial on this ground.

¶43 *2. Has Strizich established plain error in the District Court's mental state instructions?*

¶44 Strizich did not object to the jury instructions at trial but challenges several on appeal. To invoke this Court's common-law doctrine of plain-error review, Strizich must "(1) show that the claimed error implicates a fundamental right and (2) 'firmly convince' this Court that failure to review the claimed error would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process." *Favel*, ¶ 24 (quoting *State v. Daniels*, 2011 MT 278, ¶ 32, 362 Mont. 426, 265 P.3d 623).

¶45 Strizich first claims that the District Court erred in instructing the jury on Count II, Accountability for Aggravated Burglary. Because Strizich was not convicted of Count II,

21

even if he could show an error that implicates a fundamental right, he cannot establish that this error led to a manifest miscarriage of justice.

¶46 Next, Strizich contends that the District Court failed to instruct the jury that theft is a result-based crime with respect to the mental state.

¶47 Under § 45-6-301, MCA, "[a] person commits the offense of theft when the person purposely or knowingly obtains or exerts unauthorized control over property of the owner and . . . has the purpose of depriving the owner of the property." The court's Instruction No. 32 stated:

> With respect to THEFT, a person purposely obtains or exerts unauthorized control over property of another, when it is the person's conscious object to engage in conduct of that nature. With respect to THEFT, a person has the purpose of depriving the owner of the property when it is the person's conscious object to cause such a result.

The first sentence of the instruction pertains to the act element of theft (exerts unauthorized control). It states that the mental state concerning the act element of theft is conduct-based (e.g., "it is that person's conscious object to engage in conduct of that nature"). The second sentence of the instruction pertains to the result element of theft (deprivation of the owner's property). It states that the mental state as to the deprivation is result-based (e.g., "it is the person's conscious object to cause such a result"). The result of the crime of theft is the deprivation of the owner's property. *See State v. Lawrence*, 2016 MT 346, ¶ 31, 386 Mont. 86, 385 P.3d 968. Instruction No. 32 fairly instructed the jury that the mental state as to the deprivation of the owner's property must be result-based.

¶48 Strizich alleges also that the District Court failed to instruct the jury properly on the mental state of the aggravating factor in aggravated burglary. Under § 45-6-204, MCA,

22

[a] person commits the offense of aggravated burglary if the person knowingly enters or remains unlawfully in an occupied structure and:

(a)(i) the person has the purpose to commit an offense in the occupied structure; or

(ii) the person knowingly or purposely commits any other offense within that structure; and

(b) in effecting entry or in the course of committing the offense or in immediate flight after effecting entry or committing the offense:

(i) the person or another participant in the offense is armed with explosives or a weapon; or

(ii) the person purposely, knowingly, or negligently inflicts or attempts to inflict bodily injury upon anyone.

The District Court's Instruction No. 17 stated,

A person commits the offense of [aggravated burglary] as alleged in Count I, if the person knowingly enters or remains in an occupied structure with the purpose to commit the offense of Theft therein, and in effecting entry, in course of committing the offense, or in immediate flight after the commission of the offense, the person purposely, knowingly, or negligently inflicted or attempted to inflict bodily injury upon another(s).

Instruction No. 36 defined "purposely" with respect to aggravated burglary: "a person has the purpose to commit an offense when it is the person's conscious object to cause such a result." Instruction No. 37 defined "knowingly" with respect to aggravated burglary: "a person knowingly enters or remains unlawfully in an occupied structure when the person is aware of his or her conduct." Instruction No. 38 defined "negligently" with respect to aggravated burglary: "a person acts negligently when an act is done with a conscious disregard of the risk, or when the person should be aware of the risk by knowingly entering or remaining unlawfully in an occupied structure."

23

¶49 Taken as a whole, these instructions fully and fairly instructed the jury on each mental state definition as it may apply to different elements of aggravated burglary, including the aggravating factor charged. Though Strizich parses details of the instructions that could have been worded more clearly as applied to certain elements, he made no such argument or objection at trial. Strizich has not met his burden to demonstrate that the District Court committed plain error in its jury instructions, and he is not entitled to a new trial on this ground.

## CONCLUSION

¶50 We affirm the District Court's March 14, 2018 Amended Judgment and Commitment.


/S/ BETH BAKER


We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE


Justice Laurie McKinnon, dissenting.

¶51 I dissent. First, I would conclude the evidence of Strizich's flight from Elkhorn was irrelevant. Alternatively, I would conclude Strizich properly preserved his Rule 403 objection and the evidence of his flight from Elkhorn, introduced through testimony concerning Lamere's bad acts, was unfairly prejudicial and violated Rule 404(b).

¶52 The majority concludes the evidence of Strizich's flight is relevant because it is probative of his "desire to avoid legal responsibility for the charged offense." Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more [or less] probable than it would be without the evidence." M. R. Evid. 401. Generally, all relevant evidence is admissible; irrelevant evidence is not. M. R. Evid. 402. Here, Strizich was not fleeing the crime scene of the burglary for which he was eventually charged, nor was he fleeing from an arresting officer who intended to apprehend him for the burglary offenses. The circumstantial evidence the Court relies upon to support its conclusion that Strizich was conscious of his guilt for the charged burglary offenses, and thus constituted relevant evidence, is that Strizich left a medical rehabilitation center three weeks after the offense and was a passenger in a vehicle driven by Lamere. However, it was Lamere, not Strizich, who led police on a high-speed chase, and it was Lamere, not Strizich, who ultimately was charged with criminal endangerment following those events. In my opinion, there is no evidentiary support for the jury to infer Strizich's consciousness of guilt from Lamere's high speed chase, and the evidence was highly prejudicial to Strizich. I disagree that Strizich's flight from Elkhorn has any relevance to his consciousness of guilt for the charged burglary offenses.

¶53 I agree that evidence of flight may prove relevant to a defendant's consciousness of guilt in certain instances. Evidence of flight that creates an inference of the defendant's consciousness of guilt has been admissible evidence since the English common law. *See Hickory v. United States*, 160 U.S. 408, 418, 16 S. Ct. 327, 331 (1896). Of course, flight is not limited to the guilty, for "the innocent do often conceal through fear or other

emotion." *Hickory*, 160 U.S. at 421, 16 S. Ct. at 332. As such, "[e]vidence of flight tends to be only marginally probative as to the ultimate issue of guilt or innocence." *State v. Hall*, 1999 MT 297, ¶ 45, 297 Mont. 111, 991 P.2d 929 (citations omitted). "In the face of Supreme Court decisions expressing doubt as to the probative value of flight, the lower courts have generally scrutinized the facts of each case to determine whether the jury should be given the opportunity to draw an inference of guilt from a defendant's flight." *United States v. Peltier*, 585 F.2d 314, 323 (8th Cir. 1978) (internal citations omitted). Any probative value of evidence of flight depends on the degree of confidence with which four inferences can be drawn: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *State v. Patton*, 280 Mont. 278, 292, 930 P.2d 635, 643 (1996) (Leaphart, J., specially concurring) (quoting *United States v. Jackson*, 572 F.2d 636, 639 (7th Cir. 1978)). Importantly, here, the "validity of drawing these inferences in turn depends upon the number of evidentiary manifestations suggesting *defendant's decision to flee was prompted by considerations related to the crime in question*." *Peltier*, 585 F.2d at 323 (emphasis added). In *Bailey v. United States*, 416 F.2d 1110, 1115 (D.C. Cir. 1969), it was explained that "guilt, as a factual deduction, must be predicated upon a firmer foundation than a combination of unelucidated presence and unelucidated flight."

¶54     When I apply these inferences to the evidentiary record here, I would conclude (1) the evidence surrounding Strizich's departure from Elkhorn had no relevance or connection to the charged burglary offenses; (2) Strizich's leaving Elkhorn was not

26

circumstantial evidence of any consciousness of guilt for the charged burglary offenses; (3) there is no consciousness of guilt that infers consciousness of guilt for the charged burglary offenses; and (4) an inference of *actual* guilt based on this evidentiary record is analytically improper. Analytically, flight evidence is generally considered "admission by conduct." *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977). I cannot say, with any degree of confidence, that the four permissible inferences could be drawn from the State's evidence. I fail to see how Strizich's departure from Elkhorn in a vehicle driven by Lamere, three weeks after the burglary offenses occurred, is an admission of guilt by Strizich *of the burglary*.

¶55 The majority relies primarily on *Burk* to reach its conclusion, but fails to properly apply *Burk*. As the majority cites from *Burk*, "a defendant *must* do more than merely fail to show up for the flight evidence to be proper." 234 Mont. at 123, 761 P.2d at 827 (emphasis added). Burk's failure to appear was paired with an "inherently unbelievable story" excusing his absence. *Burk*, 234 Mont. at 123, 761 P.2d at 827-28. At the time Strizich fled, it is true that an arrest warrant had been issued in connection with the burglary. However, Strizich had already been informed of the warrant three weeks before his flight and admitted this knowledge at trial. Strizich had not been charged with any crimes, and the record indicates he was not charged with the burglary offenses until nearly two weeks after his flight. Nor would Strizich be charged with any offense for the flight from Elkhorn. Strizich's flight, then, simply could not cause him to fail to appear at any proceedings. *See* § 1-3-221, MCA ("That which does not appear to exist is to be regarded as if it did not exist."). At trial, Strizich did not present an "inherently unbelievable" story.

27

*See Burk*, 234 Mont. at 123, 761 P.2d at 827-28. Strizich testified truthfully concerning the circumstances of his flight and acknowledged that doing so might impact his friends. Moreover, evidence of his flight, three weeks after the burglary but before any formal proceedings commenced, has no probative value to his guilt for the charged offenses. Simply, Strizich did not "do more than merely fail to show up." After his arrest, he showed up and testified truthfully. Evidence of his flight, then, must be improper. *See Burk*, 234 Mont. at 123, 761 P.2d at 827. Accordingly, I would find the District Court abused its discretion and that evidence of Strizich's flight was improper under Rule 402. I now address whether, assuming the relevancy of the evidence, Strizich's Rule 403 objection was properly preserved.

¶56 The majority states that Strizich failed to raise a specific Rule 403 objection at trial and "did not give the District Court a chance to rule on the balance of probative value against unfair prejudice." Opinion, ¶ 29 (internal quotations omitted). In my view, this represents a half-truth. Rule 103(a)(1), M. R. Evid., requires "a timely objection . . . stating the specific ground of objection, *if the specific ground was not apparent from the context*." (Emphasis added). Our analysis, accordingly, focuses on the record.

¶57 In *State v. Greytak*, the district court overruled Greytak's objection on grounds of speculation at trial. 262 Mont. 401, 403, 865 P.2d 1096, 1098 (1993). On appeal, Greytak argued the testimony at issue constituted improper impeachment which bolstered the witness's credibility. 262 Mont. at 404, 865 P.2d at 1098. We affirmed the district court's ruling, noting "the prosecutor's question was not improper for the reason urged at the time of trial and that the reason raised for the first time on appeal was not apparent from the

28

context in which the question was asked." 262 Mont. at 404, 865 P.2d at 1098. In *State v. Castle*, the defendant again objected on grounds of speculation. 1999 MT 141, ¶ 13, 295 Mont. 1, 982 P.2d 1035. The district court overruled the objection and referenced the witness's expert qualifications as laying sufficient foundation for their testimony. *Castle*, ¶¶ 13-15. We affirmed the district court's ruling and noted "the specific ground for objection [was not] apparent from the context of the objection, as is evidenced by the District Court's inference that the objection related to Reilly's expert qualifications." *Castle*, ¶ 15. Conversely, in *Superior Enterprises, LLC v. Montana Power Co.*, Superior Enterprises objected to Montana Power Company's failure to disclose an intended witness but failed to specify whether the witness was an expert or lay witness. 2002 MT 139, ¶¶ 12-13, 310 Mont. 198, 49 P.3d 565. We based our conclusion on the district court's "apparent[ ] aware[ness] that [the witness] was testifying as an expert" and noted the district court's colloquy calling the witness an expert. *Superior Enters. LLC*, ¶ 13. In the context of the case, we concluded the objection was adequate. *Superior Enters. LLC*, ¶ 13.

¶58 Other precedent provides further guidance to our context-based inquiry. In our recent decision, *State v. Tome*, we were faced with the preliminary issue of whether Tome properly preserved his Confrontation Clause objection for appeal. 2021 MT 229, ¶ 18, 405 Mont. 292, 495 P.3d 54. In *Tome*, the State contended "Tome's general reference to the Confrontation Clause was insufficient to preserve his argument . . ." *Tome*, ¶ 18. We disagreed, concluding our review of the record "demonstrate[d] that the court understood Tome's objection" and noting the district court's comments were relevant in reaching that

29

conclusion. *Tome*, ¶ 19. We further noted if "the court were limited to the arguments and reasoning of counsel in its decisions of cases, to the exclusion of our own observations, many cases would lead us far from what we understand to be the true object of the court." *Tome*, ¶ 20 (citations omitted). Nor is it unprecedented for us to "permit[ ] parties to bolster their preserved issues with additional legal authority or to make further arguments within the scope of the legal theory articulated to the trial court." *State v. Montgomery*, 2010 MT 193, ¶ 12, 357 Mont. 348, 239 P.3d 929; *see also Tome*, ¶ 21 (compiling cases).

¶59    *Busta v. Columbus Hospital*, 276 Mont. 342, 916 P.2d 122 (1996), provides further illustration of a context-based objection under Rule 103(a)(1). The majority correctly notes that "we specifically declined to review a Rule 403 argument on appeal where the defendant . . . [did not make] a Rule 403 objection at trial" in *Busta*. Opinion, ¶ 29. However, in the very next sentence after we concluded the Rule 403 objection was waived, we noted "[a]lthough irrelevance *was not specifically stated as a basis for the defendant's objection* to the plaintiff's photographic exhibit, we will construe its objection to the effect that the author of the message on the exhibit was not a party to mean that the exhibit was therefore irrelevant." *Busta*, 276 Mont. at 354, 916 P.2d at 129 (emphasis added). The record and context of the objection proved crucial to our interpretation of the relevance objection in *Busta*. In *State v. Rogers*, we noted that Rogers failed to specifically cite Rule 404(b) as the basis for his objection. 2013 MT 221, ¶ 34, 371 Mont. 239, 306 P.3d 348. Nevertheless, we concluded his statements, including the objection "'Do you want to prosecute me on my past, or this charge?' . . . were sufficient to put the State and the court on notice" of the grounds for Rogers's objection. *Rogers*, ¶ 34. This

line of cases indicates the key inquiry concerns the district court's understanding of the objection.

¶60 I agree with the majority that Strizich failed to expressly and specifically object under M. R. Evid. 403 by saying "I object under 403." I disagree, however, that Strizich's objection was not properly preserved and "did not give the District Court a chance to rule on the balance of probative value against unfair prejudice." Both the District Court and the State construed Strizich's objection as raising Rule 403 concerns in the following colloquy:

> [State]: As long as it was provided in the discovery, and it was, then the obligation is on the defense to bring it to the Court's attention at omnibus or certainly before now, and the Court can have a hearing as to its probative value, and all of that time is gone, Judge.
>
> So [defense counsel] sits on this issue until today, literally with the jury waiting outside, and then *he argues that it's somehow prejudicial. It may be prejudicial*, but that's why it's flight evidence. It demonstrates his consciousness of guilt, your Honor. Once again it's relevant and admissible, and [defense counsel] has not done what he was directed to do by the Supreme Court in the *18th Judicial District*.
>
> [District Court]: All right. Well, *I think I'm still obligated to examine the relevant probative value of the evidence of – that's going to be offered and weigh this against the prejudice inherent in this type of evidence in light of the actual need to introduce it.* I still think I have that obligation under Rule 404, even at this late juncture.

(Emphasis added.)

From context, it is clear both the State and District Court understood Strizich's objection. This Court should not be willing to so easily ignore "our overriding obligation to protect the substantial rights of litigants when the basis for the objection was clear to the litigants and the trial court." *Tome*, ¶ 22. All parties clearly understood Strizich's objection raised Rule 403 concerns. Moreover, and contrary to the majority's conclusion, the District Court

31

believed it was obligated to balance the probative value against the prejudicial effect. It makes no functional difference whether that analysis was rooted under Rule 403 or Rule 404. I would find Strizich's Rule 403 objection properly preserved for our review and conclude the unfairly prejudicial impact of the evidence outweighed its limited probative value, assuming it had any at all.

¶61 The majority again cites *Burk* to foreclose Strizich's argument that the evidence of his flight violated Rule 403. However, *Burk* remains factually distinguishable from the instant case. The evidence of flight in *Burk* concerned Burk's "incredible story" that blamed his absence at his initial trial on a car accident that he claimed occurred while en route to his trial. 234 Mont. at 123, 761 P.2d at 827. Burk's absence resulted in an apparent delay of nearly one year from his original trial date. 234 Mont. at 123, 761 P.2d at 827. Burk testified that, after his car crashed into the Bitterroot River, he was swept down river and hiked to Lolo Pass. 234 Mont. at 123, 761 P.2d at 827. Upon reaching Lolo Pass, he saw no cars and proceeded to hike to Florence "the rest of that day and all through the night in the rain and hail" before arriving "dry, calm and oriented" in Missoula the following day to explain his absence. 234 Mont. at 123, 761 P.2d at 827. At trial, the State presented evidence discounting Burk's "inherently unbelievable" story, which we concluded was unnecessary to prove Burk's guilt but nonetheless proper. 234 Mont. at 123-24, 761 P.2d at 828. The State's evidence, while unnecessary to prove Burk's guilt, served to rebut Burk's tale and undermine his credibility.

¶62 In my view, evidence of Strizich's flight from Elkhorn unfairly prejudiced the jury against Strizich. Unfair prejudice "refers to the degree the jury might impermissibly rely

on the intermediate inference of propensity." *State v. Reopelle*, 2017 MT 196, ¶ 24, 388 Mont. 271, 399 P.3d 903. We assess unfair prejudice under Rule 403 through a "fact-specific balancing test . . ." *State v. Haithcox*, 2019 MT 201, ¶ 16, 397 Mont. 103, 447 P.3d 452.

¶63 On appeal, Strizich contends that the State went too far by presenting testimony from multiple witnesses and taking judicial notice of Lamere's conviction. I agree. Here, unlike in *Burk*, Strizich's flight from Elkhorn was not responsible for any delay in the proceedings against him. Nor did Strizich present a tale involving a cross-country trek worthy of Hugh Glass, as in *Burk*. The prejudicial impact of three witnesses, including two deputies from the Lewis and Clark County Sheriff's Office, providing details of a sensational escape and high-speed chase substantially outweighed any value provided and, in my view, unfairly prejudiced the jury against Strizich. The District Court's decision to take judicial notice of Lamere's youth court disposition, concerning an offense which all parties agreed Strizich was not charged for, only further emphasized the prejudicial effect of the evidence to the jury. The impact on the jury, after hearing from three witnesses of this sensational escape and high-speed chase, was magnified by the District Court when it instructed the jury:

> Ladies and gentlemen of the jury, at this time the Court is going to notify you that it has taken judicial notice of cause number DJ 2017-1, in the matter of William Lamere. The Court, in this regard, the Court takes judicial notice that Mr. Lamere admitted to the offense of criminal endangerment in that on or about January 21, 2017, at approximately 6:46 p.m., he knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to another when he was observed driving a silver Honda four-door passenger car with a male in the passenger seat in excess of 135 miles an hour northbound on Interstate 15 through the Sieben Flats area while being

33

pursued by law enforcement vehicles who had their lights on. After he exited the interstate highway onto Recreation Road driving 65 miles an hour, he lost control of the car and spun into a snowbank.

In this regard the Court also takes further judicial notice of Judge Seeley's February 24, 2017 order in DJ 2017-1, and the petition in that matter filed on or about January 27, 2017.

The unfairly prejudicial impact of Lamere's disposition, which only served to associate Strizich with bad actors, outweighed any probative value of his consciousness of guilt.

¶64 Lastly, regardless of whether the evidence was relevant or Strizich preserved his Rule 403 objection, I believe Rule 404(b) should have prohibited admission. At trial, Strizich argued evidence of Lamere's juvenile court disposition and the details of the high-speed chase was impermissible Rule 404(b) evidence. I agree, and I would conclude that Rule 404(b) applies to evidence of "other crimes, wrongs, or acts" of third parties that do not appear at trial and prohibit the State from introducing such evidence. I believe my interpretation of Rule 404(b) is supported by the plain text and consonant with other rules of evidence. "We interpret a statute first by looking to its plain language. We construe a statute by reading and interpreting the statute as a whole, without isolating specific terms from the context in which they are used by the Legislature." *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003 (citations and internal quotations omitted). Statutory construction remains a "holistic endeavor" and must account for the statute's text, language, structure, and object. *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426. "A whole act must be read together and where possible, full effect will be given to all statutes involved." *Delaney & Co. v. City of Bozeman*, 2009 MT 441, ¶ 22, 354 Mont. 181, 222 P.3d 618 (citations omitted).

¶65    The explicit language of M. R. Evid. 404 indicates a distinction between the parties impacted.  Rule 404(a) prohibits, broadly, the admission of "[e]vidence of a person's character or a trait of character . . . for the purpose of proving action in conformity therewith on a particular occasion . . . ." Contained within this broad prohibition are three delineated exceptions where character evidence may be admissible.  First, "[e]vidence of a pertinent trait of character offered by an *accused*, or by the prosecution to rebut the same." M. R. Evid. 404(a)(1) (emphasis added).  Second, evidence of "a pertinent trait of character of *the victim* of the crime offered by an accused . . . or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case . . . ." M. R. Evid. 404(a)(2) (emphasis added).  The final exception is evidence "of the character of *a witness*, as provided in Article VI." M. R. Evid. 404(a)(3) (emphasis added).  Converse to these specifically recognized parties in Rule 404(a)(1)-(3), Rule 404(b) provides evidence of "other crimes, wrongs, or acts is not admissible to prove the character of *a person* in order to show conformity therewith."  (Emphasis added.)  Similarly, Rule 404(c) allows evidence of "*a person's* character . . . in cases in which character or a trait of character of *a person* is an essential element of a charge, claim, or defense." (Emphasis added.)  By its plain language then, the legislature knew how to differentiate between subsets of individuals and intended "a person" and "an accused" have different meanings when the Rules speak of one and not the other.  Accordingly, Rule 404(b) is not constricted solely to the acts of the *defendant*, but rather to any person.

¶66    My reading is consonant with the scheme of the Rules.  Rule 404, as explained, provides what character and misconduct evidence is admissible and in what context.

Rules 607 and 608 govern which parties may impeach a witness and how the witness may be impeached. Rule 609 places a limitation on impeachment, providing that, "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is not admissible."

¶67 My conclusion is further consistent with jurisprudence interpreting the Federal Rules of Evidence.[1] *See, e.g., Huddleston v. United States*, 485 U.S. 681, 685-86, 108 S. Ct. 1496, 1499 (1988) (discussing Fed. R. Evid. 404(b) and noting "[t]he actor in the instant case was a criminal defendant . . . [o]ur use of [this] term[ ] is not meant to suggest that our analysis is limited to such circumstances."); *United States v. Williams*, 458 F.3d 312, 317 (3d Cir. 2006) ("the prohibition against the introduction of bad acts evidence to show propensity applies regardless of whether the evidence is offered against the defendant or a third party."); *United States v. Lucas*, 357 F.3d 599, 605 (6th Cir. 2004) ("prior bad acts are generally not considered proof of any person's likelihood to commit bad acts in the future. . . ."); *Agushi v. Duerr*, 196 F.3d 754, 760 (7th Cir. 1999) (concluding in a civil case that "Rule 404(b) does apply to third parties."); *United States v. McCourt*, 925 F.2d 1229, 1231 (9th Cir. 1991) (discussing Fed. R. Evid. 404(b) and concluding "on its face, Rule 404(b) applies to 'a person' and is not limited to the defendant.")[2];

---

[1] Montana Rules of Evidence 402, 403, and 404 were modeled on, and are largely identical to, Federal Rules of Evidence 402, 403, and 404, and "cases and treatises discussing these federal rules may be consulted as persuasive authority for purposes of analysis under their Montana counterparts." *State v. Dist. Court of the Eighteenth Judicial Dist.*, 2010 MT 263, ¶ 47, n. 4, 358 Mont. 325, 246 P.3d 415 (hereinafter *Salvagni*).

[2] In *McCourt*, the Ninth Circuit further cited several legal commentators and noted "[t]he commentators agree that Rule 404(b) applies to 'other crimes' evidence regarding persons other than defendants." 925 F.2d at 1232, n. 2.

*United States v. Kelley*, 545 F.2d 619, 623 (8th Cir. 1976) (upholding the exclusion of threats by a third party against the defendants and noting that Rule 404(b) "has been traditionally one of exclusion, permitting evidence of other crimes, wrongs, or acts of a person . . . to show the motive and intent of that person *as the accused* in a prosecution for a related offense." (emphasis in original)); *Mason v. Mitchell*, 95 F. Supp. 2d 744, 779 (Northern District of Ohio 2000) ("[Rule 404(b)'s] application is not limited to criminal defendants, to victims or witnesses, or to any other subcategory of persons. It applies to all persons."); *contra United States v. Taylor*, 701 F.3d 1166, 1172 (7th Cir. 2012) ("The language of Rule 404(b) does not apply to crimes, wrongs, or acts of another person.").

¶68     Our jurisprudence further supports my conclusion that M. R. Evid. 404(b) protects third parties.[3]  *See, e.g.*, *State v. Knowles*, 2010 MT 186, ¶¶ 43-44, 357 Mont. 272, 239 P.3d 129 (concluding the District Court abused its discretion by admitting evidence of the defendant's wife's conduct and noting evidence admissible under the modified *Just* rule "must be acts of *the defendant*, and not acts of a third party. . . ." (emphasis in original)); *State v. Kolb*, 2009 MT 9, ¶ 21, 349 Mont. 10, 200 P.3d 504 (noting the lack of authority to support admitting evidence of other crimes, wrongs or acts of a non-defendant witness except in limited circumstances); *State v. Clifford*, 2005 MT 219, ¶ 44,

---

[3] While these cases relied on the modified *Just* rule, a Rule 404(b) analytical framework which we overruled in *Salvagni*, that decision rested on the conclusion that the existing framework imposed "technical requirements that serve no practical purpose and should not have existed in the first place." *Salvagni*, ¶ 38.  As such, I see no meaningful distinction between the prohibition on third-party misconduct under the modified *Just* rule and M. R. Evid. 404(b).

328 Mont. 300, 121 P.3d 489 (affirming the District Court's exclusion of "reverse 404(b) evidence" to inculpate a third party and exculpate the defendant).

¶69    Of course, I note that Rule 404(b) places a limitation on the admission of otherwise relevant evidence by "prohibit[ing] a *theory* of admissibility which allows an ultimate inference to be made when it is premised upon an intermediate inference of the defendant's personal, subjective character." *Reopelle*, ¶ 23 (emphasis in original). "Essentially, Rule 404(b) disallows the inference from bad act to bad person to guilty person." *Salvagni*, ¶ 47 (citations omitted). We have previously noted that "if the prosecutor can arrive at an ultimate inference of conduct through a different intermediate inference, the prohibition is inapplicable." *Reopelle*, ¶ 23 (citations and internal quotations omitted). The distinction between admissible and inadmissible Rule 404(b) evidence "turns on the intended purpose of the evidence, not its substance." *State v. Madplume*, 2017 MT 40, ¶ 23, 386 Mont. 368, 390 P.3d 142. "To prevent the permissible uses from swallowing the general rule barring propensity evidence, the trial court must ensure that the use of Rule 404(b) evidence is clearly justified and carefully limited." *Madplume*, ¶ 23 (citations and internal quotations omitted). Mere reference to a permissible purpose is insufficient for admission of other acts evidence, and the proponent must "clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *Madplume*, ¶ 23 (quoting *Clifford*, ¶ 48).

¶70    In my opinion, the testimony of two law enforcement officers regarding the details of a sensational high-speed chase and the judicial notice of Lamere's conviction constituted

38

improper 404(b) evidence of Lamere's character to infer Strizich's guilt. The State articulated its theory of admissibility as Strizich's consciousness of guilt and therefore relevant to the proceedings against Strizich. The State argued

> It's not 404(b). It's not a prior. This was something that's after the fact. As mentioned, Detective Pandis in the company of Detective O'Malley, advised him he was under arrest, or would be under arrest. They did that the day after the arrest warrant was issued. He knew about it.
>
> The evidence will show he went out a window and got in the car with a Mr. Lamere and they drove 100 miles an hour with Mr. Lamere driving until they were forced off the road by pursuing law enforcement into a snowbank after -- and *Mr. Lamere in fact pled guilty to criminal endangerment because of his conduct*. So that is consciousness of guilt, your Honor, and it is admissible.

(Emphasis added.)

I consider the evidence, at its heart, to be bad acts evidence of a third party who did not appear at trial. Had Lamere testified at trial, Rules 608 and 609 likely would have barred evidence of his conviction. Evidence of Lamere's criminal endangerment conviction served no valid purpose in the proceedings against Strizich, nor did the testimony of the details surrounding the high-speed chase.

¶71    The Court suggests that three witnesses, two of whom were sheriff's deputies, and the District Court's instructions to the jury incorporating the details of Lamere's high-speed and sensational chase was harmless error. I cannot subscribe to such a distortion of the record. The State sought to align the reckless and sensational acts of Lamere with Strizich's underlying offense, which was likewise sensational. The State's focus on Strizich's flight was not an idle, inconsequential aspect of the trial, but was calculated by the State to cast Strizich in the same reckless disregard of safety for others as Lamere. Furthermore, the

39

majority also suggests "Strizich had ample opportunity to 'dissipate any prejudice'" and explain his flight, rather than admit he was afraid of going to prison and increase the probative value of the State's evidence. I would not incentivize defendants to lie and craft elaborate tales that the jury may or may not believe in an effort to excuse their actions. Rather, I would preclude the State from introducing unfairly prejudicial evidence. For the foregoing reasons, I would conclude the District Court abused its discretion by admitting evidence of Strizich's flight. Respectfully, I dissent.

/S/ LAURIE McKINNON

Justice Ingrid Gustafson and Justice Dirk Sandefur join in the Dissent of Justice McKinnon.

/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR