FILED

04/16/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0496

DA 22-0496

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 81N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

MERLE RAYMOND BRANSTETTER,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Butte-Silver Bow, Cause No. DC-19-152
Honorable Robert J. Whelan, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     James M. Siegman, Attorney at Law, Jackson, Mississippi

     For Appellee:

     Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

     Eileen Joyce, Butte-Silver Bow County Attorney, Michael W. Clague,
Deputy County Attorney, Butte, Montana

Submitted on Briefs:  February 14, 2024

Decided:  April 16, 2024

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Merle Raymond Branstetter appeals the Judgment of the Second Judicial District Court, Silver Bow County, sentencing Branstetter to ten years in Montana State Prison after the jury found him guilty of Aggravated Burglary in violation of § 45-6-204(2), MCA. Branstetter contends the District Court committed plain error when it inferred that he knowingly, voluntarily, and intelligently waived his right to testify when his counsel rested his defense without calling him to testify.

¶3      In June 2019, Branstetter was charged with aggravated assault for allegedly kicking in Karen Larsen's door, entering her home, repeatedly hitting her in the face, knocking her to the floor, and throwing her phone out the window.  At trial, Larsen testified that she had known Branstetter for about ten years; she had previously provided medical care to Branstetter's mother and had helped Branstetter financially at times.  Prior to the incident, Larsen had requested repayment of money she had lent Branstetter to buy groceries, prompting Branstetter to deny the debt, leave a voicemail threatening to kill Larsen,[1] and

---

[1] On cross-examination, Larsen conceded that the threating voicemail had been deleted and no other proof of the threat existed.

2

repeatedly visit her house. Branstetter plead not guilty to the charge, but his trial was delayed significantly for multiple reasons, including the onset of COVID-19, Branstetter's failure to appear for a status hearing, and his repeated requests for continuances, often due to changes of counsel.

¶4 During *voir dire*, Branstetter's trial counsel made the following statements to the juror panel:

> So I mentioned a moment ago that—and we'll see what happens today, whether or not Mr. Branstetter will testify. The judge will give you some instructions stating that James— that James? Not quite—that Merle has a constitutional right not to testify. That's one of the fundamental liberties that we have for all of us. And this is one of the foundations of our legal system. And if he chooses not to testify you can't hold that decision against him in any way.
>
> Is there anyone that disagrees with that, feeling that if he doesn't testify there must be—it must have some indication of guilt or something that he doesn't want to tell you about? No?
>
> You're going to hear, as part of the State's case—and they go first. They've got the burden. And you're going to hear the testimony of the woman who is the—who the State alleges to have been the victim of this burglary and this domestic violence assault.
>
> Is there anyone here who—and if you—once you hear one side of the story, is there anyone here that would want to hear Merle's side of the story so badly that they might hold his failure to testify against him despite the judge's instructions? No? Good. Good. You guys are good.
>
> Now, if Merle does decide to testify, would you all agree to consider his testimony just the same as you would the other—the other witnesses? Raise a hand maybe. Everyone? Good.

¶5 The State presented its case-in-chief and, by cross-examination, Branstetter's counsel called into question the validity of Larsen's testimony and the police's inability to verify his whereabouts on the night in question. When the State rested, defense counsel

requested and was granted a ten-minute break, prior to commencement of the Defense's case. Upon resumption, the District Court directed defense counsel to call his first witness, to which counsel responded, "Judge, the defense will rest." Accordingly, the District Court informed the jury that the evidentiary phase of the trial had concluded, and proceeded to read to the jury the stipulated jury instructions, including Instuction 13:

> In deciding whether or not to testify, the defendant may choose to rely on the state of the evidence and upon the failure, if any, of the State to prove beyond a reasonable doubt every essential element of the charge against him. The defendant in a criminal trial has a constitutional right not to testify. You must not draw any inference from the fact that the defendant does not testify. Further, you must neither discuss this matter nor permit it to enter into your deliberations in any way.

At no point in the trial did Branstetter affirmatively assert his right or desire to testify. The jury found Branstetter guilty of felony aggravated burglary. On appeal, Branstetter contends the District Court "committed plain error when it inferred that the Appellant knowingly, voluntarily, and intelligently waived his Constitutional right to testify at trial through counsel without a record to support such an inference."

¶6      Except by plain error review, this Court does not review issues on appeal that were not first raised before the trial court. *State v. Abel*, 2021 MT 293, ¶ 4, 406 Mont. 250, 498 P.3d 199. We invoke plain error review sparingly on a case-by-case basis, and only when the defendant affirmatively establishes: "(1) a plain or obvious error; (2) that affected a constitutional or other substantial right; and (3) which prejudicially affected the fundamental fairness or integrity of the proceeding." *Abel*, ¶ 4; *State v. Strizich*, 2021 MT 306, ¶ 19, 406 Mont. 391, 499 P.3d 575. "Whether an unpreserved error warrants plain

error review is a question of law reviewed de novo." *State v. Trujillo*, 2020 MT 128, ¶ 6, 400 Mont. 124, 464 P.3d 72.

¶7      The Montana Constitution, like the U.S. Constitution, enshrines the right of all defendants to testify on their own behalf. Mont. Const. art. II, § 24 ("In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel . . ."). No person can be compelled to testify against himself in a criminal proceeding. Mont. Const. art. II, § 25. The right to testify, however, can be waived if done so knowingly, voluntarily, and intelligently. *Abel*, ¶ 5. "[D]ue to the strategic and often last-minute nature of the decision to testify at trial, and the corresponding duty of counsel to apprise and advise the client in regard thereto, trial courts may infer a knowing, voluntary, and intelligent waiver of the right to testify from the statements and conduct of the defendant and counsel . . . ." *Abel*, ¶ 6. The precise means by which a trial court may make such an inference is still open to debate. *Abel*, ¶ 6 (explaining that "[o]ne line of authority holds that courts may properly infer a knowing, voluntary, and intelligent waiver based solely on a represented defendant's failure to personally object or otherwise assert the right at trial" whereas "[t]he other holds that a defendant's mere silence is insufficient alone to manifest a knowing, voluntary, and intelligent waiver absent some other record indicia of awareness of the right and his or her voluntary and intelligent adherence or acquiescence to counsel's advice to not testify.").

¶8      Branstetter contends that the District Court's inference that Branstetter waived his right to testify was erroneous because there was insufficient evidence or indication on the record to make such an inference. He argues this case is distinguishable from *Abel*, wherein

5

we concluded the right was waived, because *Abel* involved a defendant whose counsel, after an off-the-record attorney-client discussion during trial, informed the court that his client "wishe[d] *to remain silent*." *Abel*, ¶ 2 (emphasis added). According to Branstetter, because no such confirmation of his intent to remain silent was made here, there was an insufficient basis to make the same inference as in *Abel*, and an on-the-record inquiry was thus required.

¶9 In *Abel* we explained that "we have yet to squarely adopt" either of the approaches by which a proper inference of waiver is to be made, but we have "nonetheless squarely adopted the generally accepted federal rule that the constitutional requirement for a knowing, voluntary, and intelligent waiver of the right to testify in either event *neither necessarily requires the trial court to explicitly advise defendants of their right to testify, nor necessarily requires a record inquiry and determination as to whether he or she knowingly, voluntarily, and intelligently waived that right*." *Abel*, ¶ 7 (emphasis added). As such, if a defendant, who is represented by counsel and has had ample opportunity to consult with that counsel, does not testify, a trial court is within its authority to infer a waiver unless there is some evidentiary showing that the defendant was unable to comprehend their right, was inadequately informed by their counsel, or was improperly induced not to testify by their counsel. *Abel*, ¶ 10.

¶10 Here, Branstetter's counsel had clearly considered the possibility of Branstetter not testifying throughout the trial, given his comments during *voir dire* and the stipulated jury instructions, quoted above. Then, at the conclusion of the State's presentation of its case, counsel requested and was granted a ten-minute break during which Branstetter had ample

6

opportunity to confer with counsel off the record about testifying, followed by counsel's report to the court that the defense would rest without calling any witnesses. The lack of an on-the-record comment from counsel regarding a desire by Branstetter to "remain silent," as in *Abel*, does not, by itself, undermine the sufficiency of the inference the District Court could draw from this sequence of events that Branstetter was knowingly, voluntarily, and intelligently waiving his right to testify. An on-the-record comment specific to a defendant's intention not to testify is not mandatory, and the lack thereof in this case does not establish the necessity of this Court exercising plain error review to protect the fundamental fairness of the proceeding.

¶11    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶12    Affirmed.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER

7